GRANDVIEW DAIRY, INCORPORATED, and Others, Plaintiffs, *v.* THOMAS O'LEARY and Others, Defendants.

Supreme Court, Special Term, Queens County, February 13, 1936.

792

*Benjamin C. Ribman,* for the plaintiff Grandview Dairy, Inc.

*Robert E. Mebel,* for the plaintiff Grandview Dairy Mutual Welfare Aid Association.

*Rice & Maguire [Edward C. Maguire* of counsel], for the defendants.

*Paul Windels, Corporation Counsel [Charles E. Hirsimaki, Assistant Corporation Counsel,* of counsel], for the New York City Police Department.

MAY, J. Application for a temporary injunction. The employees of plaintiff corporation (hereinafter referred to as plaintiff) are not on strike, but defendant union is aggrieved because of plaintiff's

failure to renew with it a union contract. The evidence shows that the employees have their own organization (coplaintiff herein) and are receiving treatment equally good and in some instances better, in so far as wages, working conditions, sick and death benefits, and the like, are concerned, than they did or would receive under the agreement with defendant union. Plaintiff's grievance lies in the alleged acts of defendant in picketing its customers, storekeepers and other retailers of its milk, distributing to them and to the public generally circulars or handbills announcing plaintiff's alleged refusal to deal collectively with defendant union; its unfairness to organized labor; that the " Grandview Dairy   *   *   * is on strike;" its threats, coercion and intimidation of these distributors, and interference with the latter's customers.

The acts complained of, and by the proof established, clearly amount to a secondary boycott. The public policy of this State, as enunciated by the Legislature and the decisions of our courts, has been most favorable to organized labor, but it has consistently been opposed to secondary boycotts, especially when, as here, accompanied by fraudulent statements of the facts as well as actual intimidation. The reason underlying this attitude is clear, for while direct picketing of an employer permits its customers to decide whether they wish to aid the union or not, intimidation of the customers themselves amounts to a coercion of their judgment; and the law never countenances coercion.

While the provisions of the recent enactment embodied in section 876-a of the Civil Practice Act, at least in so far as the remedy of temporary injunction is concerned, seemingly indicate a legislative purpose to enlarge the scope of the appeal which organized labor may make to the public in presenting its grievances, the methods employed to do so must not involve " fraud, violence or breach of the peace." (See Laws of 1935, chap. 477.)

That fraudulent methods and misstatements have been employed in this instance has been alleged under the statute and has been established by the proof. In addition to the usual coercive effects necessarily involved in the secondary boycott itself, due to implied threats, annoyance, fear of loss, and the like, it satisfactorily appears that actual threats have been used against the plaintiff's customers, and such acts have been brought home to the defendant with reasonable certainty, and as a result many of plaintiff's customers have discontinued further dealings with plaintiff and its sales have been reduced about $1,200 daily. Nor can the defendant take refuge in the claim that it is waging a general battle on behalf of unionism against non-unionism, for the facts as developed show that although the non-union product of other milk companies is

being vended by the same customers of the plaintiff who have been threatened and interfered with here'n, no attempt has been made to have them discontinue the sale of such non-union milk generally, but only the product of the plaintiff. Their acts were designed, it would appear, " not to better labor conditions, but to destroy plaintiff's business," as was stated by the court in *Stuhmer & Co.* v. *Korman* (241 App. Div. 702; affd., 265 N. Y. 481).

The union merely offers as its defense that this is but the first skirmish and that when it succeeds in unionizing the plaintiff's plant it will follow a similar course against the other non-union milk distributors.

Nor does it appear that defendant in this instance is actuated by a genuine motive to improve labor conditions among plaintiff's employees, who, as previously pointed out, enjoy better conditions since the termination of defendant's agreement with plaintiff than before. Its sole purpose is to enlarge its own influence and membership.

Defendant contends that a temporary injunction may not be granted herein because plaintiff has failed to establish that efforts were made to settle the dispute by negotiation or through the medium of mediation or voluntary arbitration as required by subdivision 4 of section 876-a. But this language, by its express terms, must be given a common-sense interpretation. It is not incumbent on an employer to stand idly by, making repeated efforts to negotiate, mediate or arbitrate, while his business is being destroyed. All that is asked of him by the statute is that he " allege and prove that he has made every *reasonable* effort " to do so.

The facts as to the controversy which precipitated the present situation apparently are not in dispute. Plaintiff's men refused to remain in defendant's union, and plaintiff has abided by the decision of its men. The testimony elicited on the inquiry shows that at the expiration of defendant's agreement with plaintiff, when an officer of the defendant discussed with the president of the plaintiff a renewal of the contract, the latter stated that its employees were unwilling to have it renewed unless they received through the defendant the same advantages which they would receive through their own organization, and that if defendant would agree to this they would be willing to have plaintiff enter into a renewal of the union contract. The employees went so far as to threaten a strike if the agreement were otherwise renewed. Defendant expressly refused to comply with such conditions and to renew its contract on such terms, terminated the parley, and shortly thereafter began the series of acts of which plaintiff complains and against which it seeks injunctive relief. Defendant asserts that plaintiff has failed

to satisfactorily comply with the provisions of paragraph (e) of subdivision 1 of the statute in that it has not established " that the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection." The testimony shows that the plaintiff served thousands of customers, mostly small storekeepers whose places of business are widely scattered over the area of the entire city. The method of the defendant is to employ flying squadrons which trail different trucks of the plaintiff manned by agents who stop only briefly at the stores of the customers, make visits of intimidation and threat, and then depart for the stores of other customers in localities unknown. Manifestly it is impossible for the police authorities to give adequate protection against such " picketing," unless they are to be expected to detail officers on continual guard at every such establishment. The proof shows that plaintiff appealed for police protection and was promised full co-operation and that, apparently, a sincere effort was made by the municipal police authorities to give such protection. But it proved unavailing, for the acts of visitation and intimidation continued.

Defendant contends that its conduct is justified by the provisions of the statute. If its interpretation be correct such statute would offer an easy method of undermining the entire conduct of business in any community or portion of the State. According to defendant's reading of the enactment the legislative intent would permit secondary boycotts and make impossible the granting of temporary injunctions except to prohibit the use of actual force and violence by those whom it might be conclusively established were authorized by the union to commit such acts. I cannot find my way clear to draw such a conclusion or to agree that it was any part of the purpose of the framers of the law to modify the stand which the courts in this State have uniformly taken to prevent the coercive secondary boycott.

That a secondary boycott was resorted to herein and an open attempt made to coerce third parties in their relations with the plaintiff, the proof clearly establishes. The secondary boycott employed herein had the additional vice, heretofore alluded to, and condemned in the *Stuhmer* case, that it was employed not against the sale of all non-union milk, but merely against the sale of the plaintiff's milk.

But whether or not the provisions of section 876-a amplify the rights of a defendant in a labor dispute to present the true facts of a situation to customers of a plaintiff or other third parties in a manner which has heretofore been condemned by the courts as coercive, it is manifest that the enactment does not sanction or purport to

sanction a false presentation of a situation, which is certainly " fraud " within its language.

The motion for a temporary injunction is granted. If the parties are unable to agree upon the amount of bond under subdivision 3 and the finding of fact therein provided for, additional testimony will be taken. Submit findings and order on notice.