Isaac Goldfinger, Plaintiff, *v.* Philip Feintuch, as President of Butcher Union Local No. 174, Defendant.

Supreme Court, Special Term, New York County, June 11, 1936.

*Moss, Nathan, Imbrey & Levine [Alfred B. Nathan* and *Benjamin Lewis* of counsel], for the plaintiff.

*William Karlin*, for the defendant.

COLLINS, J. This case concerns the legality of the conduct of the defendant union which the plaintiff claims constitutes an unlawful secondary boycott.

For some years the plaintiff has operated a retail delicatessen store on the lower east side of Manhattan. In addition to kosher delicatessen provisions he sells other foodstuffs and conducts a luncheonette business. One of the brands of kosher provisions he sells is Ukor, a non-union made product manufactured by a copartnership consisting of Walter and Irving Blumenthal. The Blumenthals operate the only non-union plant in the city of New York manufacturing kosher meats. The defendant union has been endeavoring to unionize the Blumenthal non-union oasis. Having failed in its direct negotiations with the Blumenthals towards unionization, the union has carried its campaign to Blumenthal's customers, among them the plaintiff. The union's committee interviewed the plaintiff in an effort to procure the plaintiff to abstain from selling Ukor products and to patronize only union manufacturers. The plaintiff says that his installation of another product, union made, with the consequent retailing of such other product, along with Ukor products, did not satisfy the union, but that the union demanded that the plaintiff sell union made products solely.

The salesmen of kosher meat manufacturers are likewise unionized, and the plaintiff asserts that the defendant union went to the extent of procuring the salesmen's union to effect the refusal by a union manufacturer to sell its products to the plaintiff. The two unions, so the plaintiff claims, have joined forces to compel the plaintiff to sell only union merchandise. The plaintiff protests that about seventy-five or eighty per cent of his customers call for Ukor provisions, by name, that these products are advertised and known, and that his business would suffer heavily if he did not carry Ukor products.

Having failed in its efforts to dissuade the plaintiff from selling Ukor products, the union stationed pickets — sometimes two, sometimes one — in front of the plaintiff's store (as well as in front of other stores handling the Ukor goods) carrying signs which bear the inscription in English and Yiddish: " This store sells delicatessen that is made in a non-union factory." Underneath those words appear: " Butcher Union Local 174. Affiliated with the American Federation of Labor." Other signs bear the legend: " Ukor Provision Company is unfair to union labor. Please buy

union made delicatessen only." A Ukor sign is displayed in plaintiff's window. The plaintiff's testimony is that on two or more occasions customers were accosted by a picket with the warning "scab merchandise. Don't buy here." The plaintiff appealed to the police and they caused the pickets to leave without making an arrest, but with the departure of the police the picketing was resumed and persists to this day. The plaintiff insists that the picketing has reduced his receipts about $100 a week.

The defendant maintains that the picketing is peaceful and, therefore, lawful. It contends that in this litigation the plaintiff is but a pawn of the Blumenthals, that the plaintiff is only a nominal party, the real interested parties being the Blumenthals. To support that theory the defendant points to the facts, *first*, that the plaintiff's attorneys were retained and are being paid by the Blumenthals, and *second*, that the Blumenthals sought directly to restrain the union from prosecuting its unionization campaign, and, having failed in that attempt, are now utilizing the plaintiff as the ostensible damaged party. (*Blumenthal* v. *Feintuch*, 153 Misc. 40; *Blumenthal* v. *Weikman*, 154 id. 684; affd. without passing on the question of secondary boycott, 244 App. Div. 721.)

The defendant's theory that the Blumenthals are the real parties in interest and that the plaintiff is but a nominal party does not impress me as possessing validity. Of course the Blumenthals are interested in the litigation; whether the plaintiff is being boycotted because he handles Ukor products is of great concern to the manufacturer of those products. But it does not follow that the plaintiff is unharmed by the boycott. He, too, is interested, vitally so. He is suffering a decrease of business. Seemingly, the boycott is effective, otherwise the union would not be pursuing it. It is immaterial that the Blumenthals are defraying the expenses of the litigation; that they are doing so is quite understandable and lawful. It does not affect the plaintiff's rights.

The fundamental question is the legality of the union's conduct in picketing the plaintiff's store.

Undeniably, there is no strike in the plaintiff's store, nor has the union any grievance against the plaintiff other than that he is selling Ukor products. Indeed, the plaintiff can have no labor trouble because he employs no labor; he has no clerks; his is a one-man store. And that the union may lawfully picket the Blumenthal plant is conceded. But has the union the right to picket the store of a Blumenthal customer? May the union carry its grievance against Blumenthal to the doorstep of a third party for the sole reason that the third party sells Blumenthal goods?

To propound the question more broadly: Are the activities of a union restricted to the employer against whom the union has a grievance, or may the activities be extended so as to include and affect neutrals?

The general right of a union to picket peacefully is indubitable. The existence of a strike is not essential. " Picketing without a strike is not more unlawful than a strike without picketing." (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260.) Nor are the acts of the union limited to picketing. When the object is lawful, reasonable means to achieve it may be pursued.

" Where the acts of an employee or employees * * * are reasonably and directly calculated to advance lawful objects, they should not be restrained by injunction." (*Bossert* v. *Dhuy,* 221 N. Y. 342; *Paine Lumber Co.* v. *Neal,* 244 U. S. 459.)

That the object here sought is lawful is not controvertible. The legality of unionization is no longer an issue. Admittedly, the union is striving to drive the Blumenthals into the union camp. The efforts are proper. " Conversion to the employee's cause by peaceful persuasion or picketing is an instrumentality both salutary and lawful. (*Nann* v. *Raimist,* 255 N. Y. 307.) " (*Aberon Bakery Co., Inc.,* v. *Raimist,* 141 Misc. 774, 776.)

" When men attempt to assert what they claim to be their rights in good faith, in a decent, orderly way without resort to violence and within the law, their interests are as sacred as those of the plaintiff, and a court of equity should see to it that they are not improperly interfered with by the writ of injunction." (*Reardon, Inc.,* v. *Caton,* 189 App. Div. 501, 511.)

*Stillwell Theatre, Inc.,* v. *Kaplan* (259 N. Y. 405) does not present a precisely parallel situation, but the language there employed is pertinent in answering the plaintiff's argument that even peaceful picketing is tantamount to coercion, and thus forbidden. Said the court (at p. 412): " The collateral result of the attempted persuasion of the public not to patronize the theatre while it employed the members of the rival union might make it unprofitable for the employer to go on with the contract, but to state fairly and truly to the public that the conduct of the employer is socially objectionable to a labor union is no persuasion to break a contract. This court has never undertaken to restrain such conduct, although it has had the opportunity. It has been at pains to avoid doing so." Here, the conduct complained of as " socially objectionable " is that " of the employer " and the statement is made " to the public." More, the statement is fair and true. But instead of being made " to the public " at the employer's plant, where the objectionable social conduct is being practiced, it is made " to the public " elsewhere, where the employer's goods are marketed.

It has been held that the picketing of customers by members of the Window Cleaners Union was permissible so long as the picket signs omitted mention of the customer's name. (*Spanier Window Cleaning Co., Inc.,* v. *Awerkin,* 225 App. Div. 735.) The signs here complained of do not bear the plaintiff's name. In a later case a ruling by Mr. Justice SHIENTAG denying injunctive relief to a window cleaning contractor against the picketing of the contractor's customers (N. Y. L. J. Feb. 21, 1934, p. 879) was affirmed (*Tri-Boro Window Cleaning Co., Inc.,* v. *Krat,* 241 App. Div. 799).

Frankfurter and Green, in their work on The Labor Injunction (p. 45), say: " A strike or threat to strike may be brought to bear upon neutrals, provided that the neutrals thus used as a lever are within the same industry as those in whose coercion the union is primarily interested."

In *Bossert* v. *Dhuy* (*supra*) it was decided that union carpenters were within their rights in refusing to work on a building where certain of the building material came from a mill employing non-union labor. It was said (at pp. 364, 365): " When it is determined that a labor organization can control the body of its members for the purpose of securing to them higher wages, shorter hours of labor and better relations with their employers, and as a part of such control may refuse to allow its members to work under conditions unfavorable to it, or with workingmen not in accord with the sentiments of the labor union, the right to refuse to allow them to install non-union made material follows as a matter of course, subject to there being no malice, fraud, violence, coercion, intimidation or defamation in carrying out their resolutions and orders."

Similar results were reached in *Willson & Adams Co.* v. *Pearce* (240 App. Div. 718; affd., 264 N. Y. 521) and more recently in *New York Lumber Trade Assn.* v. *Lacey* (245 App. Div. 262; affd., 269 N. Y. 595).

The principle of the above cases is that a labor union may present its cause to the public and solicit public support to the extent of urging the public not to purchase non-union made goods or not to patronize non-union shops. Of course, the campaign must be free from fraud, duress, intimidation, coercion, malice, violence or defamation. If the object is lawful and peaceful methods are pursued and the truth is adhered to, the courts should not interfere. To do so would place the courts on the side of the employer, against the employee. The policy of the law is one of neutrality, to aid neither side unless, of course, the clear violation of an established right compels intervention.

The plaintiff insists that the picketing of his store transgresses peaceful persuasion and constitutes coercion or intimidation. But

if to picket a neutral is coercion or intimidation, then picketing the offending non-union employer would be equally coercive or intimidating. To inform the public by peaceful means that a store sells non-union goods is not, as I understand the cases, coercion or intimidation within the condemned and prohibited sense.

The fundamental invalidity of the plaintiff's position is his insistence that persuasion is necessarily coercive; that picketing *per se* implies or effects coercion. Once it is seen that peaceful methods of persuasion are not synonymous with coercive methods, the fallacy of the plaintiff's position is exposed. The plaintiff's doctrine that picketing is a species of coercion and intimidation is dogma long since discarded. " ' Picketing ' connotes no evil." (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin, supra,* p. 263.)

" But wanton or malicious picketing, picketing by coercion, terror, threats, trespass, intimidation or violence, or by false or deceptive utterance, is odious to justice and offends the law. The scope of freedom is not so unbridled and limitless as to sanction transgression of another's conflicting rights." (*Aberon Bakery Co., Inc.*, v. *Raimist, supra.*)

The plaintiff's complaint that as a neutral he should not be caused to suffer because of the union's grievance against the Blumenthals, is perfectly understandable. And it appeals to the sympathies. But for innocents to suffer in labor controversies is by no means uncommon. It is unfortunate that one not an immediate party to a dispute and whose conduct did not provoke it, should be dragged into it. But this result is an incident, though a regrettable one, of our economic and social system. If this plaintiff has rights, so have the members of the defendant union. The plaintiff is not prohibited from dealing in Ukor products. The law does not assume to dictate what products he should or should not handle. He is at liberty to handle non-union goods. But neither does the law forbid the defendant from peacefully and truthfully informing the public that the plaintiff sells non-union delicatessen. Not infrequently what serves as an advantage to one operates to the detriment of another. When one loses, another usually gains. Quite obviously, it is to the disadvantage of the plaintiff that his store be picketed; but it is equally obvious that the defendant union might be done a greater injury if the picketing is forbidden. As the plaintiff applies for equitable relief the equities are to be weighed and measured, and judgment rendered accordingly.

In those cases where injunctions were granted the factual situations were different than the situation here. (*National House Cleaning Contractors* v. *Bobaluc*, 243 App. Div. 699, affg. N. Y. L. J. Dec. 20, 1934, p. 2489; *Grandview Dairy, Inc.*, v. *O'Leary*, 158

Misc. 791; *Stuhmer & Co.* v. *Korman,* 241 App. Div. 702; affd., 265 N. Y. 481; *Commercial House & Window Cleaning Co.* v. *Awerkin,* 226 App. Div. 734, revg. 138 Misc. 512; *Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1.) In each of the cases last cited there was present some element of fraud or coercion or intimidation. In none of them was it held that mere peaceful picketing — which, as I perceive it, is but a medium of persuasion — is sufficient to constitute a basis for injunctive relief.

In *Duplex Printing Press Co.* v. *Deering* (254 U. S. 443) a condemned secondary boycott was characterized as " a combination not merely to refrain from dealing with complainant, or to advise or by peaceful means persuade complainant's customers to refrain (' primary boycott '), but to exercise coercive pressure upon such customers, actual or prospective, in order to cause them to withhold or withdraw patronage from complainant through fear of loss or damage to themselves should they deal with it."

Patently, therefore, if the combination is merely " to refrain from dealing with complainant or to advise or by peaceful means persuade complainant's customers to refrain," the combination is lawful. It becomes unlawful when " coercive pressure upon such customers, actual or prospective," is exercised.

In the *Auburn Draying Case* (*supra*) there were notices, warnings and declarations. The action complained of was " affirmative and aggressive." Coercion was resorted to. It appeared that " The defendants are intentionally attempting to coerce the plaintiff to unionize its business by aggressively inducing its established and potential customers to ignore its existence in order to be free from the loss and injury which the action of the defendants would otherwise bring to those customers."

Thus we see that the test is the means employed to attain the end. The factor that the picketed person is a neutral is not decisive.

In my judgment it makes no difference whether the so-called boycott is primary or secondary; if the medium be peaceful persuasion only, then the boycott is lawful. But if the medium goes beyond peaceful persuasion, then it is unlawful even though the conduct bears on a primary boycott.

The plaintiff is correct in declaring that violence is not a necessary element of coercion. Coercion may assume various forms. But certainly peaceful picketing alone does not amount to coercion. Coercion is forbidden in all cases; it is never lawful. So that if mere peaceful picketing were in and of itself coercion, there could never be peaceful picketing in any case, whether the picketed be the employer or a neutral. " Lawful persuasion or inducing " is not coercion. It is perfectly lawful to " appeal to the sympa-

thetic aid of would-be customers by a simple statement of the fact * * * and a request to withhold patronage." (*Truax* v. *Corrigan*, 257 U. S. 312, 327.) The *Truax* opinion also contains this terse definition of an illegal secondary boycott: " A secondary boycott of this kind is where many combine to injure one in his business by coercing third persons, against their will, to cease patronizing him by threats of similar injury." Once more we see that without coercion or some other unlawful force a secondary boycott is not banned. Again, I hold it is the *method*, and *not the relationship between the parties*, that supplies the test of lawfulness.

My conclusion, therefore, is that what was done here is lawful and will not be restrained. (*Blumenthal* v. *Feintuch*, *supra*; *Blumenthal* v. *Weikman*, *supra*.)

From what has been written it becomes unnecessary to determine the applicability of section 876-a of the Civil Practice Act to this case. I rest my decision on the ground that such coercion or other means as the law condemns has not been established. But that section tellingly indicates the policy of this State concerning injunctions in labor disputes. Since its enactment and the passage of the Norris-LaGuardia Act many of the old precedents have become outmoded. They mark a new era in the domain of labor injunctions. More and more the tendency is to permit the parties to compose their differences without resort to injunction. The old order was injunction first, the new is injunction last.

Although there is, as observed, some testimony of coercion and intimidation, it is not of sufficient robustness to warrant a finding to that effect. But the defendant is warned that it must conduct its persuasion in a peaceful manner. No coercion, fraud, intimidation, persecution or threats will be tolerated. Nor is the plaintiff to be interfered with in his dealings with manufacturers or others. There is to be no manifestation of malice. The conduct of the plaintiff's business is not to be interrupted. No one is to be molested.

Application for injunction denied, without prejudice to renewal in the event the warning herein given is violated. Findings and conclusions passed upon. Submit decision and judgment accordingly.