WEIL & Co., INC., Plaintiff, *v.* " JOHN DOE," as President, and Another, as Treasurer of SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL No. 137, and Others, Defendants.

Supreme Court, Special Term, New York County, June 24, 1938.

212

*Irving Schneider*, for the plaintiff.

*Louis Waldman*, for the defendants.

COLLINS, J. The plaintiff's furniture store is being picketed by members of the defendants' unions. Admittedly, there is no labor dispute between the plaintiff and its twenty-five clerks. These clerks are members of the Retail Furniture Workers Union, Local 853, affiliated with the C.I.O. — the so-called " left wing " of the labor movement. The relations between the plaintiff and its union clerks are harmonious; the latter have no grievance against the former regarding hours, wages or conditions of labor.

The plaintiff, obviously partial to union labor, ordered a neon electric sign for its store and specified that " Sign work to be done by union labor, Local No. 304." After the erection of the sign at a cost to it of $1,075, its store was and still is picketed by members of the Sheet Metal Workers International Association, Local No. 137, International Brotherhood of Electrical Workers, Local No. 3, and New York Sign Writers Union, Local No. 230. It is avowed that the sign was non-union manufactured. The pickets bear signs with such legends as " Please do not patronize this store, signs unfair." " Unfair " is in large, bold letters and dominates the signs. The plaintiff maintains that a hasty glance at the picket signs gives the impression that the plaintiff's store is unfair to union labor and that a labor dispute within the store is in progress.

Thus we see that this controversy does not involve such questions as the right to unionize or to bargain collectively. Nor does it pertain to a dispute between the plaintiff and its workers. The right to picket a business where a labor dispute — in the common understanding and acceptation of the term — resides, is not entangled with the problem here posed.

Assuming that the pickets' legends tell the truth, the case presents the issue as to whether the picketing here is a boycott which the law countenances or condemns.

The tendency has been to enlarge rather than to abridge the right to picket. (*Aberon Bakery Co.* v. *Raimist,* 141 Misc. 774.) But the right is not borderless; it has boundaries. The terminus

of one man's rights is quite often the starting point of another's. Thus, the Court of Appeals in *Goldfinger* v. *Feintuch* (276 N. Y. 281) (where I refused to enjoin a secondary boycott, 159 Misc. 806) fixed the boundaries by holding that " picketing may be carried on not only against the manufacturer but against a *non union product* sold by one in unity of interest with the manufacturer who is in the same business for profit " (p. 286). " We do not hold more," added the court, " than that where a retailer is in unity of interest with the manufacturer, the union may follow the non-union goods and seek by peaceful picketing to persuade the consuming public to refrain from purchasing the *non-union product,* whether that is at the plant of the manufacturer or at the store of the retailer in the same line and in unity of interest with the manufacturer " (p. 287).

Again: " In other words, it may, in a proper manner and in a peaceful way, ask the public to refrain from purchasing *products made by non-union labor* and state where the same are sold " (pp. 287, 288).

We see, therefore, that to validate a secondary boycott, there must be a " unity of interest " between the picket and the picketed. A remote connection is not enough.

Was there such a unity of interest here? I think not. The plaintiff is not in the same character of business as the manufacturer of the sign; it does not deal in electric signs. It is not a party to the controversy between the manufacturer of the sign and the defendants. " It is illegal to picket the place of business of one who is not himself a party to an industrial dispute to persuade the public to withdraw its patronage generally from the business for the purpose of coercing the owner to take sides in a controversy in which he has no interest." (*Goldfinger* v. *Feintuch, supra,* p. 286.)

In *Canepa* v. " *Doe* " (277 N. Y. 52), a decision more recent than the *Goldfinger* case, the Court of Appeals, in a case likewise concerning an electric sign as well as the same unions here affected, held that a liquor store which had erected a non-union sign could not be picketed, because thereof. Such picketing was declared to be " part of a true secondary boycott and an unlawful interference with the business of the plaintiff (*Goldfinger* v. *Feintuch,* 276 N. Y. 281)." The court did not directly pass on the question whether or not that case was one " involving or growing out of a labor dispute " as these terms are defined by section 876-a of the Civil Practice Act. It did hold the complaint sufficient. (*Canepa* v. " *Doe,*" 277 N. Y. 52.)

We reach, then, the nub of this case which is: Do the facts here disclose a labor dispute within the meaning of the statute? I hold they do not. To say that they do is to say that almost any situation which indirectly or ultimately affects labor, is a labor dispute. And almost any situation *does* indirectly or ultimately affect labor, just as all members of a community are indirectly or ultimately, in some wise or degree, affected by a labor controversy, no matter how far removed that controversy is. Are there no limits as to who are parties to a labor dispute? There surely must be innocents immune from picketing. Is a patron of a non-union store a party to a labor dispute within the store? Is the reader of a newspaper or a magazine issued from a non-union plant a party to a dispute in the plant? May children studying text books published by a non-union publisher be picketed as parties to a labor dispute? Does a passenger on a train or a bus manned by non-union workmen *ipso facto* become a participant in a labor dispute? May a house-wife be picketed for using non-union products? Is one to be pursued by pickets for wearing non-union garments?

Kindred questions could be multiplied indefinitely, and each, it seems to me, carries its own negative answer. Certainly the link between the picket and the picketed must be of greater strength and closeness than is here revealed; the affinity must be more direct and intimate and united than the relationship between this plaintiff and these defendants. The plaintiff has nothing to mediate with the unions. To compel it to do what section 876-a of the Civil Practice Act requires to be done as conditions precedent to obtaining a temporary injunction, would be fatuous. Quite obviously, that section is no pattern for the facts here disclosed. If that section does apply, then it would be difficult to contemplate a case where it does not.

This case, however, is not without precedent. The First and Second Departments have held that section 876-a of the Civil Practice Act is inapplicable to this situation. (*Scharf* v. " *John Doe*," 247 App. Div. 882; *American Gas Stations, Inc.*, v. " *John Doe*," 250 id. 227.) The latter case also involved an electric sign, and it was held that there was no labor dispute. (See, also, *Thompson* v. *Boekhout*, 249 App. Div. 77.)

My conclusion is that the plaintiff's proofs are sufficient to entitle it to a temporary injunction. The motion is granted. Settle order by noon of June 27, 1938.