SAM FELDMAN and ABE FELDMAN, Doing Business as Feldman Bros., Plaintiffs, *v.* SAMUEL WEINER, as Treasurer, and " HYMAN " SINGER, First Name Being Fictitious, True First Name Being Unknown to Plaintiffs, as President of Local 805 of the International Brotherhood of Teamsters, an Unincorporated Voluntary Association Affiliated with the American Federation of Labor, and Others, Defendants.

Supreme Court, Special Term, New York County, February 20, 1940.

*Frances Kneitel*, for the plaintiffs.

*Buitenkant & Cohen*, for the defendants.

ROSENMAN, J. By this motion plaintiffs seek to enjoin *pendente lite* all of the defendants and their agents from picketing their premises, and from otherwise interfering with their business.

There are certain undisputed facts: The plaintiffs are in the wholesale meat business in Manhattan. Their shop is completely unionized; all their employees are members of the Packing House Workers Union, Local No. 5 of the Amalgamated Meat Cutters and Butchers Workmen of America, affiliated with the American Federation of Labor — a union voluntarily chosen by said employees, with which plaintiffs have a closed shop agreement. All products sold by the plaintiffs are handled and processed while on the plaintiffs' premises exclusively by union labor; and there is no dispute of any kind between the plaintiffs and their employees, or between the plaintiffs and any union having jurisdiction over their products and employees. The defendant union is not seeking to organize the plaintiffs' employees; nor is there any labor difficulty between the plaintiffs or their employees and the defendants. The defendant union is Local No. 805 of the International Brotherhood of Teamsters, affiliated with the American Federation of Labor. The defendant union is attempting to organize the employees of a firm known as the Van Iderstine Company, which is engaged in the fat rendering business in Long Island City. The Van Iderstine Company is not engaged in the meat industry as such, but is a

manufacturer of tallow, grease and glue. The by-products and waste materials of plaintiffs' business include inedible fats, bones, suet and skins which the plaintiffs sell to the Van Iderstine Company from time to time, when sufficient amounts have accumulated. These periodic sales of refuse result in but incidental income to the plaintiffs. Pursuant to their efforts to unionize the Van Iderstine Company, defendants have requested plaintiffs not to sell their waste products to that company; and upon plaintiffs' refusal to comply, defendants have caused pickets to patrol in front of plaintiffs' place of business. The pickets carry signs reading as follows:

" PLEASE

DO NOT

PATRONIZE

THIS PLACE.

THE EMPLOYEES REMOVING WASTE ARE

UNFAIR TO

LOCAL 805 "

There are certain disputed facts also: (1) The plaintiffs claim that the defendants have intimidated them, and threatened that if the plaintiffs did not discontinue the sale of their waste products to the Van Iderstine Company, in addition to picketing, defendant would call plaintiffs' employees out on strike, would stop deliveries of meat to plaintiffs' place of business, would prevent retail butchers from picking up the meats purchased from plaintiffs, and would ruin plaintiffs' business generally. The defendants deny such action, and insist that they are only picketing. (2) The plaintiffs claim that the legends on the signs carried by pickets are false and misleading; the defendants claim them to be truthful. (3) Plaintiffs claim that the defendants persist in obtrusive picketing and block up the entrance to their place of business, thus interfering with the ingress and egress of plaintiffs' customers. This the defendants also deny.

The disputed questions of fact need not be resolved, for they do not seriously affect the questions of law presented by the undisputed facts. Do the conceded facts present a " labor dispute " within the meaning of subdivision 10 of section 876-a of the Civil Practice Act? The plaintiffs admit that they have not complied with the requirements of the prior subdivisions of that section; and if a " labor dispute " is here involved, an injunction *pendente lite* may not properly issue.

In 1937 the Court of Appeals was called upon to decide whether a labor union could picket a retailer of products purchased by him from a non-union manufacturer, and whether such picketing came

within the provisions of section 876-a of the Civil Practice Act. (*Goldfinger* v. *Feintuch,* 276 N. Y. 281.) The court held that under such circumstances, the product of the non-union manufacturer may be picketed; and that the situation presents a labor dispute within that section of the Civil Practice Act.

" It is illegal," said the court, " to picket the place of business of one who is not himself a party to an industrial dispute to persuade the public to withdraw its patronage generally from the business for the purpose of coercing the owner to take sides in a controversy in which he has no interest * * *.

" Within the limits of peaceful picketing, however, picketing may be carried on not only against the manufacturer but against a *non-union product* sold by one in unity of interest with the manufacturer who is in the same business for profit " (p. 286).

The expression, " unity of interest," was not defined by the court. At least one limitation on the term may be culled from the language above used; that such picketing is lawful only where it is against a " non-union product " of a " manufacturer who is in the same business for profit " as the retailer.

That such limitation was intended reasonably appears from the court's expression that " We do not hold more than that where a retailer is in unity of interest with the manufacturer, the union may follow the *non-union goods* and seek by peaceful picketing to persuade the consuming public to refrain from purchasing the *non-union product,* whether that is at the plant of the manufacturer or at the store of the retailer in the same line of business and in unity of interest with the manufacturer " (p. 287).

That this limitation was intended also appears from Judge RIPPEY's concurring memorandum wherein he concurred on the ground " that there was *complete* unity of interest between the plaintiff and the manufacturer. Except for the finding of unity of interest, the facts would establish a secondary boycott and would be illegal " (p. 291).

In this case the plaintiffs are not themselves parties to an industrial dispute, for the dispute is between the defendants and the Van Iderstine Company. The picketing is not being carried on against a non-union product, for all of plaintiffs' products are unionized. It is not being carried on against a manufacturer who is in the same business for profit as the retailer, for the plaintiff is concededly in the meat business for profit while the Van Iderstine Company is in the fat rendering business and makes tallow, grease and glue for profit. The periodic sales of its waste products to the Van Iderstine Company are so small a part of plaintiffs' business that a conclusion that the two companies are in the same business for profit cannot reasonably be made.

The defendants claim, however, that there is such "unity of interest " here as to be a " labor dispute " under the statute because " they [plaintiffs, the defendant union and the Van Iderstine Company] are engaged in the same industry and are selling products to a non-union open shop firm " [*sic*] (pp. 1, 2, answering affidavit). But this statement is unsupported by any evidentiary facts, and the conclusion is contradicted by the undisputed facts.

The problem presented in this case was anticipated soon after the holding in *Goldfinger* v. *Feintuch* (*supra*). " The test of ' unity of interest ' adopted by the court is intended to clarify the question as to the existence or non-existence of a labor dispute in a situation where a third party is being picketed. Where one purchases from a non-union employer and benefits directly from the underpayment of non-union workers, the instant case applies and the statutory policy against the issuance of injunctions in labor disputes will be held in point. *But the court has deliberately limited its holding to a fact pattern such as was before it in this case.* * * * What of the situations where the party picketed is *selling* to the non-union employer * * * There can be no satisfactory answer to some of these problems at the present time — even from the standpoint of social desirability." (15 N. Y. U. L. Q. Rev. 284.) No reported appellate case called to the court's attention has attempted to answer the question.

The courts, since the *Goldfinger* v. *Feintuch* case, have sought to limit the application of that case to its facts; they have refrained from broadening the meaning of " unity of interest " beyond the scope embraced therein.

In *Canepa* v. " *John Doe* " (277 N. Y. 52), for example, the plaintiff, who had a liquor store, had purchased a neon sign which had been constructed and hung on plaintiff's store by a union rival of the defendant union. Defendant began to picket plaintiff to his damage. A motion to dismiss plaintiff's complaint for an injunction was made; and two questions were certified to the Court of Appeals: (1) Did the action involve a labor dispute within the provisions of section 876-a of the Civil Practice Act; (2) if it did, did the complaint state a cause of action. The court's *per curiam* opinion was: " The complaint sufficiently alleges that the picketing by the defendants is part of a true secondary boycott and an unlawful interference with the business of the plaintiff (*Goldfinger* v. *Feintuch*, 276 N. Y. 281). Whether or not the case is one ' involving or growing out of a labor dispute ' as these terms are defined by section 876-a of the Civil Practice Act, the complaint is sufficient." The court thereupon answered only the second question, and that in the affirmative. Despite the court's failure

directly to answer the first certified question, the point was definitely raised by the defendants-appellants that the complaint did not comply with the requisites of section 876-a. In holding, therefore, that the complaint did state a cause of action, it may reasonably be inferred that under the circumstances there presented the court was of the opinion that the plaintiff did not have to comply with the requirements of that section.

The principle of this case has since been followed by lower courts without exception. (*American Gas Stations, Inc.*, v. "*John Doe*," 250 App. Div. 227, 228; *Silverglate* v. *Kirkman*, 171 Misc. 1051, 1052; *Scharf* v. "*John Doe*," 247 App. Div. 882 [see points 1 and 2 of appellants' brief and point 1 of respondents' brief in record on appeal]; *Weil & Co., Inc.*, v. "*John Doe*," 168 Misc. 211, 214.) In each of those cases the courts specifically held that no labor dispute was involved so as to require plaintiff to comply with section 876-a.

Under similar circumstances the Court of Appeals in a criminal case reiterated the same principle: "There was here no such unity of interest with the manufacturer as was developed in the *Goldfinger* case. (Cf. *Canepa* v. "*John Doe*," 277 N. Y. 52.)" (*People* v. *Bellows*, 281 id. 67, 71.)

At least one appellate court has even gone further than this in its limitation when it said, "Plaintiffs sold union-made beer, which they purchased from a Binghamton bottling corporation. The defendants asserted the right to picket the restaurants conducted by the two plaintiffs, upon the ground that the beer was delivered in a truck driven by a chauffeur who was not a member of the Chauffeur's Union, of [*sic*] which a majority of the chauffeurs in the vicinity belonged. This is a secondary boycott, and not within the protection of the statutes of the State." (*Chapman* v. *John Doe*, 255 App. Div. 893; leave to appeal to Court of Appeals denied, Id. 919.) (See, also, *Wohl* v. *Bakery & Pastry Drivers, etc.*, 14 N. Y. Supp. [2d] 198.)

The conclusion reached is that defendants' action amounts to a secondary boycott which does not come within the permissible legal exception noted in the *Goldfinger* case, in that the necessary "unity of interest" is absent, and that this result remains unaffected by section 876-a of the Civil Practice Act because it does not involve a "labor dispute" within the contemplation of that section.

To hold otherwise would be to hold that a union-shop manufacturer of garments, for example, could be picketed if any one of his many customers, wholesale or retail, did not have a union shop. Indeed it would go further in view of the fact that the seller and buyer of the waste in this case are really in different

businesses. It would require a holding that a union-shop furniture manufacturer or a union-shop stationery supplies dealer who sold his products to many customers in different kinds of business, could be subjected to picketing because one of his vendees in an entirely different line of business was not itself unionized. A mere statement of such conclusion indicates how clearly it cannot have been the legislative intent as expressed in section 876-a of the Civil Practice Act. In such cases no one could say that it was a non-union product which was being picketed, or that any " identity of of interest " was present.

The motion for an injunction *pendente lite* is granted. Settle order on one day's notice and submit memoranda on the question of the amount of the bond.