HERBERT STRAUSS and ARTHUR S. WESTERFELD, Doing Business under the Firm Name and Style of HEPBERT's MARKET, Plaintiffs, *v.* GUSTAVE STEINER, as President, and JULIUS I. TERKELTOUB, as Treasurer, of the Amalgamated Meat Cutters Union of Brooklyn, Queens and Long Island, Local 342, Defendants.

Supreme Court, Special Term, Nassau County, January 9, 1940.

*David Holman*, for the plaintiffs.

*David Belson*, for the defendants.

CUFF, J.   This is a motion for a temporary injunction.   Plaintiff conducts a retail meat business employing twenty-six to twenty-eight men.   Defendant is a labor union functioning in the butcher trade.   The latter has installed pickets at plaintiffs' place of business.   To be relieved of that condition plaintiff seeks the injunction.

Defendants oppose the motion and cross-move for a dismissal of the complaint on the ground that plaintiffs have not complied with the conditions precedent required by section 876-a of the Civil Practice Act.   The rejoinder of plaintiffs is that section 876-a has no application to these facts because they say no " labor dispute " obtains.

The proof shows that no employee of plaintiffs is on strike, belongs to the union or has a grievance against plaintiff, the

employer. There are these three additional factors: After the picketing started the workers of plaintiffs, meeting at the home of one of their number, considered the question of joining the defendant union and unanimously rejected the idea. They investigated working conditions in unionized shops in the neighborhood and found that plaintiff's treatment of their help is " as good and in many instances much better than " that accorded the workers in the closed shop establishments. It was also revealed at that meeting that no employee had been asked to join defendant union until two days after picketing had been instituted, when two employees were approached; both declined the invitation. On the foregoing statement of facts plaintiffs rest their claim that there is no " labor dispute."

Defendants' position is contained in the answering affidavit of the president of the union. He says: " In the course of the existence of this union it has raised the general standard of living of its members by reducing their hours of labor, increasing their wages and generally improving their working conditions. The defendant union has been seeking to unionize the place of business of the plaintiffs and has sought to negotiate with the plaintiff with that in view. The plaintiff refused to negotiate, nor employ union help, and defendant union has caused their place of business to be picketed." On that statement defendants claim that there is a " labor dispute."

This is the question: Is there a " labor dispute " when the employees of an establishment are entirely not of the union; are not on strike; are wholly satisfied with their working conditions; have refused, after consideration, to join the union and are of the opinion that their working conditions will not be bettered, may even be rendered worse, by union affiliation?

The Appellate Division of the Third Department in *Bond Stores, Inc.*, v. *Turner* (258 App. Div. 769) held that no " labor dispute " existed where the circumstances were singularly similar to the case at bar. In that case there was no union employee, no strike, no grievance by an employee. There was a rejection of a proposal to affiliate with the union by sixty of the sixty-three workers, which poll included all of plaintiff's employees as well as all others engaged in the occupation of retail clothing workers in the city of Albany. The defendant union based its claim that there was a " labor dispute " upon the single fact that plaintiff had refused to enter into a closed shop agreement. That case seems to be parallel with this one. My learned colleague, Justice DALY, sitting in Nassau county at the November, 1939, term, citing the *Bond Stores, Inc.*, case, ruled, in a similar situation, that no " labor dispute " was present

and granted a proprietor an injunction. In his memorandum, however, he pointed out that *Fairfield Bar & Restaurant, Inc.*, v. *Friedman* (14 N. Y. Supp. [2d] 709) and *Bent Steel Sections, Inc.*, v. *Doe* (170 Misc. 736), each a Special Term decision which had not been reviewed by an appellate court, were to the contrary. (*Kraushaar* v. *Krug*, N. Y. L. J. Nov. 25, 1939, p. 1804.)

Subdivision 10 of section 876-a of the Civil Practice Act not only defines a " labor dispute " (¶ c), but also states when a case shall be held to involve a " labor dispute " (¶ a).

Subdivision 10 (¶ a) provides: " A case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation, or who are employees of one employer."

That provision means that workers are to be considered, under section 876-a, by the occupations that they follow. To determine if a " labor dispute " is involved in a given lawsuit, the question is not to be decided by conditions obtaining within the group of employees of any one firm. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, 263.) The unit to be reckoned with embraces all workers engaged in the particular occupation. It matters not that they have different employers. The whole craft or trade is to be viewed as one entity in so far as employees are concerned, because the act throws together all " persons who are engaged in the same industry, trade, craft or occupation."

Subdivision 10 (¶ a) further provides: " A case shall be held to involve or grow out of a labor dispute * * * when the case involves any conflicting * * * interests in a ' labor dispute ' (as hereinafter defined) of ' persons participating or interested ' therein (as hereinafter defined)."

" Persons participating or interested " in a labor dispute is defined in paragraph (b) of the same section as follows: " A person * * * shall be held to be a person participating or interested in a labor dispute if relief is sought against him * * * and if he * * * is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association * * * of employees engaged in such industry, trade, craft or occupation."

That language makes each defendant a " person participating " in a " labor dispute."

Paragraph (c) declares: " The term ' labor dispute ' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or

any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee." The controversy in this case arises out of the kind of interests referred to in that definition.

Section 876-a indicates that where words are defined by it the intention was to have courts adhere closely to the meaning that the statute itself places upon those words. The purpose of the framers of the law was evidently to avoid the results of judicial construction of many of the important features of this legislation. The wisdom of that action is open to doubt, but the action has been taken and deserves respect. The legislation was enacted to make easier the path of labor unions to win workers to their cause and to make resistance to their pressure more difficult. It " is an elaborate and drastic statute," said Justice TAYLOR in *Remington-Rand, Inc.,* v. *Crofoot* (248 App. Div. 356, 359; affd., 279 N. Y. 635). For example, injunctive relief, when a " labor dispute " exists, is permitted only after a hearing and upon the presence of a rare combination of circumstances. (Civ. Prac. Act, § 876-a, subd. 1.) Before this law became effective labor men say that the use of the injunction had been abused. The preamble to section 876-a (Laws of 1935, chap. 477) so states and declares as a State policy that the injunctive powers of the equity court had been " subject to abuse in labor litigation." The fact remains that the State has spoken and has imposed conditions which have reduced the opportunities in " labor disputes " of obtaining restraining orders. Even disobedience of an injunction granted in labor litigation may not be summarily punished as is done in other cases. There must now be a trial by jury according to section 882-a. These changes affect procedure, not jurisdiction. (*Remington-Rand, Inc.,* v. *Crofoot,* 248 App. Div. 356; affd., 279 N. Y. 635.)

Justice ROBERTS, in *New Negro Alliance* v. *Sanitary Grocery Co.* (303 U. S. 552), referring to the act of Congress of March 23, 1932, chapter 90 (47 U. S. Stat. at Large, 70, 73; U. S. Code, tit. 29, § 113), which is almost identical with section 876-a of the Civil Practice Act, said (p. 563): " It was intended that peaceful and orderly dissemination of information by those defined as persons interested in a labor dispute concerning ' terms and conditions of employment ' in an industry or a plant or a place of business should be lawful; that, short of fraud, breach of the peace, violence, or conduct otherwise unlawful, those having a direct or indirect interest in such terms and conditions of employment should be at liberty to advertise and disseminate facts and information with respect to terms and conditions of employment, and peacefully to

persuade others to concur in their views respecting an employer's practices."

The statute itself answers affirmatively the question, may a labor union seek to impose its claimed benefits upon workers who are not identified with it, by publicizing their attitude (picketing). *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin* (245 N. Y. 260) holds that a place may be picketed "with the intent of inducing him [the employer] to employ only union labor." Where picketing is legal, a "labor dispute" exists.

In *Goldfinger* v. *Feintuch* (276 N. Y. 281) it was decided that a "labor dispute" existed and a place of business selling a product made by non-union hands could be picketed as long as the legends carried by the pickets dealt with the product only. That case treated with the relationship of a labor union to an industry wherein there was no employee, as affected by the definition of "labor dispute" found in subdivision 10 of section 876-a. It held that a delicatessan store with no employees, where a product was sold which was manufactured by non-unionists, had a unity of interest with the manufacturer of that product as defined by section 876-a, presented a "labor dispute" and could be picketed for the purpose of publicizing the fact that the article had such a history. Judge FINCH, in the prevailing opinion (HUBBS, J., dissented), said (p. 289): "It is urged, however, that section 876-a was never intended to apply to the conduct involved herein; that this case does not involve a 'labor dispute' within the meaning of that term as used in the statute. Subdivision 10 of that section defines labor dispute. Pertinent portions thereof provide: 'A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation * * * when the case involves any conflicting or competing interests in a "labor dispute" (as hereinafter defined) of persons "participating or interested" therein (as hereinafter defined).' (Par. a.) The term 'labor dispute' is then defined as any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee. (Par. c.) In view of this definition it cannot be contended that the case at bar does not involve a labor dispute under section 876-a. Controversy has arisen out of an attempt by the defendant to represent the employees of W. & I. Blumenthal in fixing the terms

or conditions of employment. W. & I. Blumenthal, the defendant union, and the plaintiff are all engaged in the same industry. The only ground that could be advanced for contending that the statute is not applicable is that the plaintiff is not the employer of the men whom the defendant seeks to represent; but the statute expressly provides that it is applicable to parties in the same industry, ' regardless of whether or not the disputants stand in the relation of employer and employee.' "

The purport of the concurring-in-part-memorandum of Judge RIPPEY was that if there was a complete unity of interest between the retailer and the manufacturer that a " labor dispute " existed.

If unity of interest and a " labor dispute " were present in the *Goldfinger* case — the joinder of the maker and the seller of manufactured articles — surely there is unity of interest and a " labor dispute " where defendant is a labor union in the butcher industry and plaintiff is the employer of twenty-six to twenty-eight butchers.

Aside from " following the product " (*Goldfinger* v. *Feintuch, supra*), which action by unions is legal because of the unity of interest of the picket and the picketed (*Weil & Co., Inc.*, v. *Doe,* 168 Misc. 211, 213), labor unions may be interested in the wages and working conditions of those who are not of the union. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin,* 245 N. Y. 260.) That, it would seem, is necessary if unionism is to be effective, and if the State meant anything when section 876-a was enacted it meant to clear the ways for effective functioning of labor unions.

A labor union could not long exist if it failed to note what was going on in shops where it had no members. Suppose the A company, a union shop, produces the same article as the B company, an open shop, and pays higher wages than the non-union B company. It follows that the non-union B company will be able to undersell the A company. That condition, carried to its logical conclusion, will eventually see the A (union) company eliminated from the field of competition. As a consequence of the destruction of the A company the union members will be out of their jobs. For that reason the labor union, composed of men of one occupation, are vitally interested in how their fellow workers are faring, as Judge ANDREWS said in the *Exchange Bakery* case (*supra*), " because of the influence of one upon the other " (p. 263).

In *New Negro Alliance* v. *Sanitary Grocery Co.* (*supra*) the United States Supreme Court held that a " labor dispute " existed. There the demand of a group of negroes on the proprietor plaintiff, that workers of their color be given jobs in certain stores, was refused. They then picketed the stores, carrying banners stating in substance that the stores not employing negro help should not

be patronized by negroes. The act of Congress (U. S. Code, tit. 29, § 113 *et seq.*, referred to *supra*) which the court was considering has been held to be practically the same as section 876-a. (See *Fairfield Bar & Restaurant, Inc.*, v. *Friedman*, 14 N. Y. Supp. [2d] 709.) The application for an injunction based upon the ground that no " labor dispute " existed was denied.

I regret that I cannot follow the decision of the learned Appellate Division of the Third Department (*Bond Stores, Inc.*, v. *Turner, supra*) and that of my learned colleague, Justice DALY (*Kraushaar* v. *Krug, supra*). I think that section 876-a fully defines the situation presented here as a " labor dispute." That there is no striking employee at plaintiffs' place of business; that the employees are satisfied with their working conditions; and that they have rejected the union, makes no difference. Their fellow workers in the butcher industry seek to unionize the shop in which they toil. Their employer has refused to negotiate. The union has a right, by virtue of section 876-a, to take appropriate action — to picket. The picketing is to give publicity to the attitude of the employer — the plaintiffs.

The disorderliness that marked the picketing at the outset of this controversy was insufficient to change the character of the situation. (*Wise Shoe Co., Inc.*, v. *Lowenthal*, 266 N. Y. 264, 269.) A labor union may lose its right to picket by indulging in excesses (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin, supra*, p. 269; *Busch Jewelry Co., Inc.*, v. *United Retail Employees' Union*, 168 Misc. 224; *Steinkritz Amusement Corp.* v. *Kaplan*, 257 N. Y. 294), but where the infractions are in plain view, as was the case here, the police should act.

" Disorderly conduct, force, violence or intimidation by pickets should be sternly suppressed by the police." (*Goldfinger* v. *Feintuch*, 276 N. Y. 281, 291, LEHMAN, J.)

There is a " labor dispute." That being my finding, the complaint must be dismissed because it lacks compliance with section 876-a of the Civil Practice Act. Plaintiffs have leave to serve an amended complaint within twenty days.

The motion for a temporary injunction fails.