MAY's FURS & READY-TO-WEAR, INC., et al., Respondents, *v.* AARON BAUER, as President of Retail Women's Apparel Salespeople's Union, Local 1125, Appellant.

Argued January 8, 1940; decided March 12, 1940.

*Lawrence Kovalsky* and *Jonah J. Goldstein* for appellant. The case involves or grows out of a "labor dispute" as defined by subdivision 10 of section 876-a of the Civil Practice Act. (*Goldfinger* v. *Feintuch*, 276 N. Y. 281; *Lauf* v. *Shinner & Co.*, 303 U. S. 323; *New Negro Alliance* v. *Sanitary Grocery Co.*, 303 U. S. 552; *American Furniture Co.* v. *I. B. of T. C. & H. of A.*, 222 Wis. 338; *Wallace Co.* v. *International Asso. M. M. H. L.*, 155 Ore. 652; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *Thompson* v. *Boekhout*, 273 N. Y. 390; *Boro Park Market* v. *Heller*, 280 N. Y. 481; *Nevins, Inc.*, v. *Kasmach*, 279 N. Y. 323; *Hydrox Ice Cream Co.* v. " *Doe*," 250 App. Div. 770; *People ex rel. Sandnes* v. *Sheriff of Kings County*, 164 Misc. Rep. 355.) The injunction should be modified so as to permit peaceful picketing. (*J. H. & S. Theatres, Inc.*, v. *Fay*, 260 N. Y. 315; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *Dickinson* v. *Springer*, 246 N. Y. 203; *Wise Shoe Co.* v. *Lowenthal*, 266 N. Y. 264; *Fenske Bros.* v. *Upholsterers International Union*, 358 Ill. 239; 97 A. L. R. 1318.)

*Benjamin C. Ribman* for respondents. The Supreme Court had power to enjoin appellant to the extent set forth in the judgment appealed from. (*Busch Jewelry Co.* v. *United Retail Employees' Union*, 281 N. Y. 150.) It was established by the weight of the evidence that appellant's activities deprived it of the rights which a law-abiding labor union should enjoy. It was, therefore, proper to deny appellant the right to picket peacefully. (*Remington-Rand, Inc.*, v. *Crofoot*, 248 App. Div. 356; 279 N. Y. 635; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *Goldfinger* v. *Feintuch*, 276 N. Y. 281.)

FINCH, J. This is a suit for an injunction restraining a labor union from engaging in any picketing or other acts directed against the business of plaintiff employer. There are two plaintiffs, plaintiff employer and plaintiff association of employees of plaintiff employer. The general manager of plaintiff employer has been the president of

the plaintiff association of employees since its inception. Defendant, a labor union, is Local 1125, chartered by the Retail Clerks International Protective Association, which in turn is affiliated with the American Federation of Labor. In referring to the parties hereafter, " plaintiff " will mean plaintiff employer, unless it is otherwise specified, and " International " will refer to the parent body of Local 1125.

Assuming that there is some evidence to sustain the findings, the following are briefly the facts upon which are predicated the issues of law raised upon this appeal.

Plaintiff operates a retail store for which it engages about 300 employees, a total which is increased to about 500 if temporary employees are included. The store is located in the borough of Brooklyn, city of New York, in one of the most congested shopping districts to be found anywhere. About 25,000 persons visit the store weekdays and between 45,000 and 60,000 on Saturdays and Mondays.

On October 19, 1935, a labor union other than the present defendant but also chartered by the International and known as Local No. 1250, started a campaign in order to obtain recognition from plaintiff as the bargaining agent of its employees. These activities on the part of Local 1250 continued until March 20, 1936. During that course of time Local 1250 and those acting on its behalf committed acts of violence and endangered the safety of the employees of plaintiff and of other persons in that shopping neighborhood. On March 20, 1936, the general organizer of the International wrote to plaintiff to the effect that Local 1250 had been withdrawn from the field and that thereafter Local 1125, defendant herein, would prosecute the efforts of the union to obtain recognition as bargaining agent, and would participate in negotiations should plaintiff so desire. Local 1125 picketed from March 20, 1936, until the latter part of June or early part of July of the same year. It has been found that " the activities of said pickets in the employ of defendant were disorderly and unpeaceful and as a result at least two of said pickets were arrested, charged with

disorderly conduct and duly tried and convicted." There was a cessation of the picketing and other activities of defendant in connection with its campaign directed against plaintiff from July, 1936, until March, 1937, at which latter date the campaign was resumed. Acts of violence were committed until the end of April, at which time this action was begun. No extreme violence appears to have occurred after April 24th, which is about a week before the actual commencement of this suit. From April 24, 1937, until the termination of the trial, a period of about two months, only one picket was arrested, and the charge in that instance was loud talking on the picket line. In connection with this offense of loud talking there may be considered remarks of counsel for plaintiff made upon the opening of the trial: "So that at the present time all that is going on at our place of business is the picketing of the Fulton street side with three pickets, bearing signs which are subject to some criticism, and the Hanover place entrance is being picketed by one picket doing the same thing, and then in addition these four women pickets are constantly talking in a loud tone of voice. They could not be heard if they talked in an ordinary tone of voice because of the noise and congestion existing there."

Although the record amply supports the general finding that defendant and those for whom it is responsible did commit acts of violence, a study of the record fails to reveal any evidence in support of some of the specific acts charged against defendant. It is unnecessary to enumerate these for the following reason: There is no finding that those acts of violence which defendant did commit so permeated and characterized all the conduct of defendant that if defendant were allowed to continue any of its activities upon however restricted a field, even that narrow scope of activity would result in violence. On the contrary, there is the finding referred to above to the effect that after the commencement of this action the activities of defendant were considerably modified and restrained. That this is the situation in the case at bar is further indicated by counsel for plaintiff in

the course of the following discussion which took place at the trial: " The Court: I could not stop them from peacefully picketing. Mr. Ribman (plaintiff's counsel): Of course not. I wish an order of this court restraining them from violence. Up to this date, evidently up to this time they yielded to the force of the action we brought, and all their conduct in the past has been modified; and all that they do now that we object to is to use this loud language." There are findings that unless the unlawful acts committed by defendant and those acting on its behalf are restrained, defendant and its agents will continue to perpetrate such acts.

Upon the basis of the foregoing facts Special Term has issued a perpetual injunction in sweeping terms restraining defendant, its members, agents " and any and all confederates " from calling or continuing any strike against plaintiff, " from interfering in any manner, directly or indirectly, with plaintiffs * * * engaging in the business of plaintiffs," " from causing or permitting its members, officers, or others acting in concert or part with them, including any and all persons, unions, associations, groups or bodies, to picket and patrol, congregate or walk back and forth or otherwise in front of and in the vicinity of said store of plaintiff," " from interfering in any manner, directly or indirectly, with the business, good will, name or reputation of plaintiff," " from attempting to take any action which may influence any employees of plaintiff," " from attempting to coerce, threaten or intimidate any employee of plaintiff (1) [employer] or member of plaintiff (2) [employees' association], or to attempt to persuade said employees or members or any of them, to join defendant or any other labor union." Thus, by the terms of the decree, defendant is prohibited from carrying on, not only unlawful acts, but even those which, either by statute or otherwise, have come to be recognized as lawful activities in which a labor union may engage. Upon appeal to the Appellate Division that court affirmed the judgment of Special Term and stated that because of its acts of violence defendant

union was not engaged in a labor dispute and was "beyond the pale and protection of section 876-a. * * * The defendant union and its adherents, by their conduct referred to, became outlaws and, therefore, not entitled to the protection of the statute." (255 App. Div. 643, at p. 644. Cf. Code Crim. Proc. §§ 814, 826.)

Upon this appeal there is involved the scope and application of a legislative enactment whose wisdom or lack of wisdom is not a consideration open to judicial inquiry. Subject only to constitutional restrictions, it is the duty of this court to apply the statute as enacted by the Legislature.

Plaintiffs contend (1) that section 876-a of the Civil Practice Act does not apply to the case at bar because the latter does not arise out of a labor dispute; (2) that if the case at bar does arise out of a labor dispute, nonetheless, section 876-a should not be construed to forbid the relief which has been granted to plaintiffs; (3) that if section 876-a does purport to proscribe such relief under the circumstances found in the case at bar, then to that extent the statute is unconstitutional. Defendant, on the other hand, urges that the case at bar is subject to the restrictions of section 876-a and that the judgment which has been rendered in favor of plaintiffs transgresses the limitations of that statute.

*First.* Whether the case at bar is within the scope of section 876-a.

Section 876-a provides that "No court nor any judge or judges thereof shall have jurisdiction to issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute," except in accordance with the provisions of the statute. A "labor dispute" is defined as follows:

"10. When used in this section, and for the purpose of this section:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation,

or who are employees of one employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is between one or more employers or associations of employers and one or more employees or associations of employees; between one or more employers or associations of employers and one or more employers or associations of employers; or between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a ' labor dispute ' (as hereinafter defined) of ' persons participating or interested ' therein (as hereinafter defined).

" (b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association of employers or employees engaged in such industry, trade, craft or occupation.

" (c) The term ' labor dispute ' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee."

There is a finding that the union does not include among its members any of the employees of plaintiff employer, and that perfect harmony exists between plaintiff employer and its employees who are banded together as plaintiff association of employees under the presidency of the general manager of plaintiff employer. Accordingly, it is contended that the existence of a labor dispute is negatived by these facts: *First*, that plaintiff and defendant do not stand in the relation of employer and employee, and, therefore, the disagreement which exists between the two is not a *labor*

dispute; and, *second*, the employees of plaintiff employer are altogether satisfied with their conditions of employment and, therefore, the case at bar does not involve any labor *dispute*.

The argument of plaintiffs runs contrary both to the plain words of the statute and to the meaning which had been attributed to the concept of a " labor dispute " by the cases in this State prior to the enactment of the statute.

In explicit terms, the statute provides that if the other requisites are present, then a labor dispute shall be found to exist " regardless of whether or not the disputants stand in the relation of employer and employee." (Subd. 10-c.) It is indisputably clear that the existence or non-existence of the employer-employee relation cannot be the factor by which to determine the presence or absence of a labor dispute. Other questions of fact, therefore, must constitute the crucial test. The statute supplies two relevant criteria. *First*, the dispute, in order to be a labor dispute, must be one which relates to " conditions of employment * * * or representation of persons in negotiating * * * conditions of employment * * *." (Subd. 10-c.) *Second*, the disputants must be connected with the same industry, etc. (Subd. 10-a, subd. 10-b.) Thus, the statute defined the content of the dispute and the relationship which the disputants must bear to each other.

Let the facts be measured by this statutory test. The case at bar arises out of a dispute concerning conditions of employment and the representation of employees. The disputants are an employer of retail store clerks and an association of retail clerks of this particular employer on the one hand, and a labor union composed of retail store clerks on the other hand. These facts lead to the inescapable conclusion that the case at bar arises out of a labor dispute as defined by section 876-a.

The same result follows from cases arising in this State prior to the enactment of section 876-a. Although the members of the defendant union are not the employees of plaintiff employer, no less is their direct interest in the

labor policy of an employer who is engaged in the same industry as they are. It is common knowledge that the conditions of employment prevailing in a given establishment cannot be insulated against the influence of different standards which may exist elsewhere in that industry. " The purpose of a labor union to improve the conditions under which its members do their work; to increase their wages; to assist them in other ways may justify what would otherwise be a wrong. So would an effort to increase its numbers and to unionize an entire trade or business. It may be as interested in the wages of those not members, or in the conditions under which they work as in its own members because of the influence of one upon the other. All engaged in a trade are affected by the prevailing rate of wages. All, by the principle of collective bargaining. Economic organization today is not based on the single shop. Unions believe that wages may be increased, collective bargaining maintained only if union conditions prevail, not in some single factory but generally. That they may prevail it may call a strike and picket the premises of an employer with the intent of inducing him to employ only union labor. And it may adopt either method separately. Picketing without a strike is no more unlawful than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured." (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260, 263.)

Thus it is the settled law of this State that the legitimate interests of a labor union are not confined to acts directed against an employer of its members. (*Nann* v. *Raimist,* 255 N. Y. 307; *Stillwell Theatres, Inc.,* v. *Kaplan,* 259 N. Y. 405; *Wise Shoe Co.* v. *Lowenthal,* 266 N. Y. 264; *Goldfinger* v. *Feintuch,* 276 N. Y. 281. Cf. *J. H. & S. Theatres, Inc.,* v. *Fay,* 260 N. Y. 315.)

The same conclusion which is required by the explicit language of our statute has also been reached in other jurisdictions. (*Lauf* v. *Shinner & Co.,* 303 U. S. 323; *New Negro Alliance* v. *Sanitary Grocery Co.,* 303 U. S. 552; *American Furniture Co.* v. *I. B. of T. C. & H. of A.,* 222 Wis. 338; see

Frankfurter and Greene, The Labor Injunction; 49 Yale L. J. 537; 15 N. Y. U. L. Q. Rev. 116.)

Plaintiffs rely upon the decisions of this court in *Remington Rand, Inc.*, v. *Crofoot* (279 N. Y. 635) and *Busch Jewelry Co.* v. *United Retail Employees' Union* (281 N. Y. 150) for the proposition that the case at bar does not involve a labor dispute. In the *Remington Rand* case the affirmance by this court was without opinion. In the *Busch Jewelry Co.* case the decision of this court was grounded upon circumstances of that particular case wherein it appeared that if any picketing were allowed then such picketing would necessarily be violent in character. The question in that case was as to the scope of the relief which should be granted, and not whether the case arose out of a labor dispute.

Plaintiffs contend that the fact of extreme violence warrants the conclusion that the case at bar does not involve a labor dispute, and consequently is not subject to the restrictions contained in section 876-a. The fallacy of this argument is revealed by the fact that where a defendant has not been guilty of unlawful activities, perforce no injunction would issue even in the absence of section 876-a. The need for statutory safeguards can exist only where a defendant is guilty of some wrongdoing and is liable to injunctive restraint. The effect of the statute is to regulate the procedure by which an injunction may be obtained and to limit the scope of the relief which may be granted. The statute is rendered meaningless unless it is allowed to operate in those cases where plaintiff is entitled to some relief.

*Second.* The scope of the relief.

Subdivision 8 of section 876-a provides: " No permanent injunction shall remain in force for more than six months from the date on which the judgment is signed, provided, however, that the duration of the injunction may be extended for another six months, if after a further hearing initiated and conducted in the same manner as the original hearing the court shall determine that the injunction shall be continued or modified in accordance with the findings of facts on the subsequent hearing."

The injunction in the case at bar, which was entered July 1, 1937, contains no provision limiting its duration in accordance with the foregoing portion of the statute. Since more than six months have elapsed, it follows, under the operation of the statute, that the judgment must be modified for failure to include among its terms a provision limiting its duration to six months. Plaintiffs contend that the statute is unconstitutional in restricting the injunction to six months. No reason is advanced in support of this assertion, and we perceive no objection upon this score. The obvious purpose of this section is to prevent the use of a stale injunction in a situation materially different from the one which first gave rise to the injunction. If at the end of the six months there still is need for an injunction, then the statute allows its continuance. Plaintiffs are not thereby deprived of property without due process of law for the reason that the statute does not deprive them of any property whatever. Plaintiffs are entitled to the protection afforded by an injunction only so long as there is a necessity therefor. The effect of the statute is but to provide a method whereby the continuing need for an injunction may be re-examined at reasonable intervals. Such disputes generally are resolved one way or another in a comparatively short time. Once the danger inherent in a situation has been dissolved, there is no further need for an injunction. Thus, the statute secures to the plaintiffs complete protection of their property rights, albeit only so long as they require protection.

Subdivision 1 (f) enumerates eleven categories of activities, *e. g.*, peaceful picketing, which may not be restrained. The injunction which has been issued enumerates fourteen paragraphs of activities which are forbidden. Defendant is restrained " from calling or continuing any strike," " from interfering in any manner, directly or indirectly, with plaintiffs," " from causing or permitting its members * * * to picket and patrol * * * in front of and in the vicinity of said store of plaintiff," " from interfering in any manner, directly or indirectly, with the business * * * of plaintiff," " from attempting to take any action which

may influence any employees of plaintiff (1) [employer] to decline to work for plaintiff (1)," etc. Restrictions such as these are improper upon two counts: *First*, they offend against the well-settled principle of equity, that an injunction must clearly inform a defendant of the acts he is forbidden to commit. Precision may be less readily attainable in some situations than others, but the injunction in the case at bar is couched in exceedingly sweeping terms. *Second*, the injunction forbids defendant to engage in activities which are altogether lawful. It has often been said by the courts of this State that an injunction is protection for the future and not punishment for the past. (*Nann* v. *Raimist, supra; J. H. & S. Theatres, Inc.*, v. *Fay, supra.*) That defendant has committed acts of violence, which would be repeated but for the staying hand of equity entitles plaintiffs to protection against *such* conduct; but just as plaintiffs are entitled to engage in their lawful pursuits, free from unlawful interference, so defendant is entitled for its lawful purposes to employ all means which are lawful. (*Senn* v. *Tile Layers Protective Union*, 301 U. S. 468, 483; *Goldfinger* v. *Feintuch, supra*, at p. 288.) It is not the function of courts to supervise labor controversies. The task is sufficiently difficult when confined to preventing the parties from overstepping the bounds of lawful conduct. Section 876-a clearly confirms the right to engage in peaceful picketing and other lawful modes of persuasion. The injunction, therefore, was improper in including many peaceful and lawful activities which are enumerated among the proscriptions.

In *Nann* v. *Raimist* (*supra*) it was held to be beyond the power of this court to review the exercise of the " chancellor's discretion " in restraining all activities if violence had been committed. Even so, the discretion of the " chancellor " was allowed only a narrow scope. (*Wise Shoe Co.* v. *Lowenthal, supra.*) And now, since the enactment of section 876-a, the " chancellor " is confined to restraining only unlawful acts. Thus the right of peaceful picketing is clearly established in this State (cf. *Hague* v. *C. I. O.*, 307 U. S. 496;

*Schneider* v. *Town of Irvington*, 308 U. S. 147, decided November 22, 1939) and the constitutionality of the act of the Legislature has been recognized. (*Goldfinger* v. *Feintuch, supra.*)

In the *Busch* case a majority of this court read the record as disclosing a situation completely permeated by violence and as affording no ray of hope that the defendant would engage in other than violent picketing. The rule of that case presents an exception which is verbal rather than real, for since defendant would have engaged only in violent picketing, the unqualified prohibition of picketing operated only on the one kind of picketing present in that situation, viz., violent picketing. In that case peaceful picketing was out of the question. In the case at bar there is no finding to that effect, and so far as the record bears upon this issue, it appears that defendant has reformed its conduct in a more peaceful direction since the institution of this suit. The injunction, therefore, should not have restrained any but violent and unlawful methods on the part of defendant.

Defendant-appellant contends that the judgment should be reversed and the complaint dismissed for failure to plead and to prove compliance with subdivision 4 of section 876-a which requires that " No injunctive relief shall be granted to any plaintiff who has failed to plead and prove compliance with all obligations imposed by law which are involved in the labor dispute in question, or who has failed to allege and prove that he has made every reasonable effort to settle such dispute either by negotiation or with the aid of any machinery of mediation or voluntary arbitration, provided for by law or contract between the parties."

In the absence of evidence of a contrary intent, a reasonable construction of the statute does not require the allegation and proof that plaintiff employer offered to negotiate with defendant union in a situation such as is disclosed by the findings in the case at bar. It has been found that this defendant union does not include among its members any employee of the plaintiff employer and that every

employee of the plaintiff employer is opposed to being represented by the union. Under these circumstances, negotiation would be an idle and futile ceremony and need not be alleged and proved as a prerequisite to injunctive relief.

The judgments should be modified so as to strike out all provisions except those restraining violence, breach of the peace and false and misleading statements. To such injunction, so modified, should be added a provision limiting the duration of the injunction in accordance with subdivision 8 of section 876-a of the Civil Practice Act.

The judgments should be modified in accordance with this opinion, and as so modified affirmed, without costs. (See 282 N. Y. 804.)

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, SEARS and LEWIS, JJ., concur; CONWAY, J., taking no part.

Judgment accordingly.