GENERAL ADVERTISERS SERVICE, INC., Respondent, *v.* "JOHN DOE", Individually and as President of Painters District Council No. 4, AFL-CIO, et al., Appellants.

Fourth Department, June 27, 1962.

*Lipsitz, Green, Fahringer & Fleming* (*Eugene W. Salisbury* of counsel), for appellants.

*George M. Donohue* for respondent.

*Per Curiam.* The judgment enjoins the appellant labor organization (hereinafter called "union") from picketing at the places of business of certain customers of the plaintiff. The allegations of the complaint, in essence, charge the defendant union with conducting secondary picketing and a secondary boycott, in that the union has coerced many of plaintiff's customers not to do business with plaintiff, for the ultimate purpose of forcing and coercing the plaintiff's employees to join the union. If true, this would, at least arguably, constitute an unfair labor practice in violation of section 8 (subd. [b], pars. [4] or [7] of the National Labor Relations Act (U. S. Code, tit. 29, § 158, subd. [b], pars. [4] or [7]) (hereinafter referred to as "NLRA"). It appears from the complaint that a labor dis-

pute exists under both Federal (Norris-La Guardia Act, § 13, subd. [c]; U. S. Code, tit. 29, § 113, subd. [c]) and State law (*May's Furs & Ready-to-Wear* v. *Bauer,* 282 N. Y. 331). However, there was no jurisdiction in the Trial Term to grant the judgment appealed from or to take jurisdiction of any aspect of this case.

The National Labor Relations Board (hereinafter referred to as "NLRB") was empowered under the Landrum-Griffin amendments of 1959 (73 U. S. Stat. 519; U. S. Code, tit. 29, § 401 *et seq.*) (U. S. Code, tit. 29, § 164, subd. [c]) to set up certain "Jurisdictional Yardsticks" to prevail on and after August 1, 1959 (C. C. H. Labor Law Reporter, par. 1610, pp. 5406–5408). These yardsticks established standards to be used to determine the cases in which the NLRB would assert jurisdiction. If the NLRB declines jurisdiction in certain classes of cases, then State courts or agencies may assert jurisdiction over those classes. The classification that applies to non-retail-businesses (the category of the plaintiff) states that jurisdiction will be asserted if the yearly outflow *or* inflow, direct and indirect, is $50,000. Inflow *and* outflow may not be added together to meet this standard. It is one *or* the other. (*Siemons Mailing Serv.,* 122 NLRB No. 13; 43 L R R M 1056 [1958].) The record shows that neither the plaintiff's outflow nor inflow was sufficient to meet the required volume. However, one of the companies with which the plaintiff did business, and which was picketed, was a retail automobile concern which had a gross yearly volume for the testing period, of over $500,000. The yardstick relating to retail concerns provides that jurisdiction will be asserted if the gross yearly volume of business is $500,000. Nothing is said about inflow or outflow.

In determining whether it will assert jurisdiction of a labor dispute in which a secondary boycott is charged, the NLRB will consider the total of all the business of not only the primary employer but secondary employers as well. In other words, if any picketed customer meets the NLRB jurisdictional standard for its classification, the NLRB will assume jurisdiction over the labor dispute, even though the primary employer does not meet the standard of its own classification. (*National Labor Relations Bd.* v. *Associated Musicians, Local 802,* 226 F. 2d 900, 907 [C. C. A. 2d, 1955]; *Jemcon Broadcasting Co.,* 135 NLRB No. 48; 49 LRRM 1492 [1962]; *Teamsters, A. F. L.,* 110 NLRB No. 233; 35 LRRM 1292 [1954]; *Madison Bldg. & Constr. Trade Council,* 134 NLRB No. 43; 49 LRRM 1174 [1961].) Further, even though on the present record only one out of eight of plaintiff's picketed customers meets the jurisdictional require-

ments of the NLRB, it would nevertheless assert jurisdiction over the entire labor dispute, including the secondary activities as to all of the picketed customers, because the complaint alleges a common pattern of secondary activity against all which is alleged to be illegal. (*Teamsters Union, Local No. 400,* 118 NLRB No. 17; 40 LRRM 1135 [1957].)

The National Labor Relation Board's rulings in the above-cited decisions have been analyzed and summarized in the Labor Law Reporter (C. C. H., p. 5409) in this manner: "In cases where a secondary boycott is charged, the Board applies the tests to the business of the primary employer or the secondary party or both, taking jurisdiction if the business of either separately or both together meets the minimum figures."

Therefore, it clearly appears that the NLRB would assert jurisdiction of this controversy under its jurisdictional yardstick standards; and, that being so, our State courts have no jurisdiction over any part of the controversy. (*Dooley* v. *Anton,* 8 N Y 2d 91.) The *Dooley* case recognizes that where "it was arguable whether the secondary picketing constituted an unfair labor practice under section 8 [NLRA]" (p. 96) State courts have no jurisdiction, thus following the mandates of *San Diego Unions* v. *Garmon* (359 U. S. 236) and *Guss* v. *Utah Labor Bd.* (353 U. S. 1).

Although the Trial Term had no jurisdiction of any phase of the matter (*Teamsters, A. F. L., supra*), that portion of the judgment which permitted picketing at the plaintiff's place of business was not appealed from and is not before us for determination.

The judgment insofar as appealed from should be reversed and the complaint dismissed insofar as it relates to secondary activities.

WILLIAMS, P. J., BASTOW, HALPERN, MCCLUSKY and HENRY, JJ., concur.

Judgment insofar as appealed from unanimously reversed on the law without costs of this appeal to any party and complaint dismissed insofar as it relates to secondary activities, without costs.