OPINION OF THE COURT
Irving Lang, J.
The defendant’s motion to dismiss the indictment because of insufficient evidence and inadequate Grand Jury instructions turns upon the resolution of one issue: whether or not a private citizen may be held liable for reckless or negligent conduct when during the course of an attempt to apprehend a robber he shoots an innocent bystander. A second issue is whether the indictment merits dismissal in furtherance of justice.
On January 8, 1980, at about 7:30 P.M., Daniel Jacobs, a 64-year-old attorney, and a companion were accosted on 58th Street between Park Avenue and Lexington Avenue by Clifton Green who stated that he had a gun and ordered *617 defendant to hand over his wallet. This was done and Green took $401. As Green was leaving, Jacobs pulled out a pistol, for which he had a valid permit, and ordered him to stop. Green fled. Jacobs then began firing shots and pursued Green onto Park Avenue, south to 57th Street and then east on 57th Street. A total of about five shots were fired, none of which hit the intended target, but one of which struck a passerby in the thigh.
Numerous witnesses were called and testified at the Grand Jury proceeding that there was light traffic and anywhere from a handful to about 10 people on the street at the time of the incident. Both Jacobs and Green were weaving in and out of the crowd, and people were running to get out of the way.
Green eluded Jacobs but was apprehended by a police officer. Subsequently he was indicted and pleaded guilty to attempted robbery in the third degree and was sentenced by me to State prison.
In an O’Henry-like twist, the victim of the crime, Daniel Jacobs, also became a defendant. He was indicted — charged with reckless endangerment in the second degree (Penal Law, § 120.20), in that he recklessly engaged in conduct which created a substantial risk of serious physical injury to another; and two counts of assault in the third degree (Penal Law, § 120.00), one alleging that he recklessly caused physical injury to another and the other count alleging that with criminal negligence he caused physical injury to another by means of a deadly weapon. All the charges are misdemeanors.
For the defendant to be guilty of the crimes, it must be proven that he either disregarded or failed to perceive a “substantial and unjustifiable risk” that injury would be caused to the passerby (Penal Law, § 15.05, subds 3, 4). The defendant raises the defense of justification as an absolute bar to his prosecution.
Under subdivision 4 of section 35.30 of the Penal Law, a private person may use deadly physical force upon another when he reasonably believes it to be necessary to “ [ejffect the arrest of a person who has committed murder, *618 manslaughter in the first degree, robbery, forcible rape or forcible sodomy and who is in immediate flight therefrom”.
The defendant maintains that any risk he took in shooting at the fleeing robber was per se justifiable under section 35.30 and therefore cannot be the basis for prosecution on a criminal recklessness or negligence charge.
As support for his argument, the defendant points out that subdivision 1 of section 35.30 of the Penal Law, which authorizes a peace officer to use deadly physical force to (a) effect an arrest for any felony involving the use or threatened imminent use of physical force or for kidnapping, arson, escape in the first degree, burglary in the first degree or any attempts thereof; (b) to overcome resistance to arrest or prevent the escape of a suspected felon who is armed with a deadly weapon; or (c) in self-defense, is followed by subdivision 2 which states that “The fact that a peace officer is justified in using deadly physical force under circumstances prescribed in paragraphs (a) and (b) of subdivision one does not constitute justification for reckless conduct by such peace officer amounting to an offense against or with respect to innocent persons whom he is not seeking to arrest or retain in custody.”
There is no corresponding limitation in subdivision 4 regarding a private person’s use of deadly force. The defendant would apply the maxim expressio unius est ex-clusio alterius, i.e., the specific mention of one thing implies the exclusion of another, to conclude that the Legislature did not intend to impose such a limitation on private persons and therefore the defendant has complete immunity from prosecution for reckless or negligent conduct.
The defendant’s interesting contention requires a careful analysis of the statute.
The primary consideration in the construction of a statute is to ascertain and give effect to the intention of the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 92, 272). While the intention should be derived from a literal reading of the statute, adherence to the letter of the law cannot be allowed to defeat the general purpose and policy intended to be promoted (People v Ryan, 274 NY 149; McKinney’s Cons Laws of NY, Book 1, Statutes, *619 § 111). The spirit of the law prevails over the letter so that “a case within the intention of a statute is within the statute, though an exact literal construction would exclude it” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 111, pp 228-229).
It should not be presumed that the Legislature intended unwise results to flow from its actions and where a literal reading leads to objectionable, unreasonable, absurd or unjust consequences a more fortunate construction is to be sought (Williams v Williams, 23 NY2d 592; People ex rel. Westchester Fire Ins. Co. v Davenport, 91 NY 574; Hayden v Pierce, 144 NY 512; Petrucci v Hogan, 5 Misc 2d 480; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 143, 145, 146).
Furthermore, penal statutes should be construed “according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law, § 5.00).
Consequently, it is necessary to examine the history of the statutes to determine if the defendant’s strict construction approach is valid and rational.
HISTORY
Originally, a public officer could use deadly physical force to effect an arrest for any felony (Penal Law, § 204 [L 1881] ; Penal Law, § 1055 [L 1909]). A private person had the right to use deadly force in defense of self or a third person where there was imminent danger of great personal injury or in resisting an attempt to commit a felony upon himself or his place of abode (Penal Law, § 205 [L1881] ; Penal Law, § 1055 [L 1909]).
In 1965, the statute was revised to restrict the use of deadly physical force. A peace officer could no longer use such force to effect an arrest for any felony, but only those felonies involving the use or threatened use of deadly physical force or where a suspect attempted to escape by the use of a deadly weapon or otherwise indicated that he was likely to endanger human life or inflict serious physical injury (Penal Law, § 35.30, subd 2 [L 1965]).
In addition, the Legislature inserted the clause holding *620 peace officers responsible for reckless or criminally negligent conduct amounting to an offense against an innocent bystander (Penal Law, § 35.30, subd 2, par [b] [L 1965]). While an officer had the right “ [to pursue an armed robber] through a crowded business area * * * [and] to shoot him in order to effect the arrest, that right is qualified and superseded by his duty to avoid injuring innocent persons by reckless or negligent use of his pistol” (Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY [1967 rev], Book 39, Penal Law, § 35.30, p 79).
The law with respect to private persons was also made more stringent and permitted the use of deadly physical force only where a person believed it necessary to defend himself or a third person from what he reasonably believed to be the use or imminent use of deadly physical force (Penal Law, § 35.30, subd 6 [L 1965]). Since a private citizen had no general right to use deadly force to effect an arrest, there apparently was no need at that time for a clause relating to reckless or criminally negligent conduct.
Problems arose under the revised law and in 1968 it was amended.
The law had been criticized for causing too much confusion in the minds of police officers as to when they could use deadly force. The police often felt “handcuffed”. (See L 1968, ch 73; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 35.30, p 116.)
The statute was amended, therefore, to authorize deadly force in effecting an arrest for a felony involving the actual, attempted or threatened use of any physical force. The Legislature also specifically authorized the use of deadly force for the felonies of kidnapping, arson, escape, first degree, and burglary, first degree, such crimes not necessarily involving the use of force but so dangerous as to warrant inclusion (Penal Law, § 35.30, subd 1, par [a]).
Also amended was the provision regarding a fleeing suspect. It was claimed that prohibiting the use of deadly force against a suspect who was not actually using a weapon placed officers in a dangerous situation, and the provision was changed to authorize deadly force upon a reasonable *621 belief that the felon was armed, regardless of whether or not he was using a weapon (Penal Law, § 35.30, subd 1, par [b]).
While expanding a police officer’s right to use deadly physical force, the Legislature nevertheless retained the limitation on reckless conduct amounting to an offense against an innocent bystander (Penal Law, § 35.30, subd 2).
Criticisms had also been made that private persons were unduly restricted in their use of deadly force. For example, a man who, immediately after a burglary during which he was robbed and his wife raped, saw the perpetrator escaping, would not be justified in shooting him. With cases of that nature in mind, the provision was amended to authorize the use of deadly force by a private person to apprehend another who has committed murder, manslaughter, first degree, robbery, forcible rape or sodomy and who is in immediate flight therefrom (Penal Law, § 35.30, subd 4). (See Seventh Interim Report of Temporary Commission on Revision of Penal Law and Criminal Code, Legislative Document No. 29, April 1, 1968; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 35.30.)
No mention was made regarding reckless or negligent conduct by a private person in making an arrest.
INTERPLAY
What impact did the 1968 amendment have on the relationship between the justification sections and the penal sanctions against reckless and negligent conduct? Prior to 1968 the statutory provisions were in essential harmony. Civilians were limited in the use of deadly physical force to self-defense or defense of others. Therefore, civilians could not use such force solely in apprehending an individual or preventing an escape and thereby avoid criminal responsibility, even if the conduct was reckless or negligent rather than deliberate. Peace officers could use deadly physical force to make certain arrests or prevent certain escapes, but were liable for reckless or criminally negligent conduct with respect to innocent persons.
*622 The 1968 amendments changed the essentially harmonious relationship between these sections and created a statutory fugue with discordant overtones in the interaction, between criminally reckless and negligent actions and the justification sections absolving persons from penal liability.
Peace officers were given additional circumstances to use deadly physical force in making arrests or preventing escapes. Interestingly, although Hechtman’s commentary refers to amended subdivision 2 of section 35.30 of the Penal Law as protecting “innocent bystanders from police action which, though in the line of duty, is performed recklessly or negligently” (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 35.30, p 117; emphasis supplied), the amended statute refers only to “reckless conduct” (emphasis supplied).
Can we assume that the 1968 elimination of liability for negligence was a legislative oversight? We can only make such an assumption from either the legislative history, which is silent on the issue, or if the change is irrational or unreasonable. This court cannot make that assumption. There is nothing inherently unreasonable in a decision by the Legislature to absolve anyone from criminal responsibility if; he performs a lawful act in a negligent manner. There is, of course, greater culpability when a person acts recklessly than when he acts negligently. Failure to perceive a risk is palpably less serious than consciously disregarding a risk. The language in section 35.30 (subd 2, par [b]) of the Penal Law relative to this issue is virtually identical in both the 1965 and 1968 statutes except that the 1968 laws eliminate negligent conduct as a predicate for criminal liability. The court, therefore, can only conclude that the legislative amendment was both deliberate and rational.
In addition to changing the justification section regarding peace officers, the 1968 amendments enlarged the rights of private persons to use deadly physical force to make arrests. Previously, civilians could use such force only in self-defense or in defense of third persons. The 1968 laws gave the right to a civilian to use deadly physical force offensively; to arrest or prevent the escape of those whom *623 he reasonably believes to have committed murder, manslaughter in the first degree, robbery, forcible rape and forcible sodomy and who is in immediate flight therefrom.
Unlike the situation with police officers, while expanding the right of civilians to use deadly physical force in making certain arrests, the legislation is silent as to whether criminal liability would attach to a civilian who acted recklessly or negligently.
THE LAW
Can we, therefore, assume that the Legislature meant to hold a peace officer liable for reckless conduct and not a private person in such situations?
There have been no appellate cases on this issue and scant case law with respect to the interrelationship between reckless conduct and the justification section as a whole. This is not surprising, since justifiable acts generally imply intentional conduct while negligent or reckless actions indicate lack of specific intent. However, where a charge of reckless conduct is involved, courts have held that if there is a claim of self-defense, it must be charged. In People v Zurita (76 AD2d 871), a defendant was convicted of reckless endangerment in driving an automobile at a police officer. The Appellate Division reversed, holding that the defendant’s claim that his actions were taken for self-protection and protection of his passengers warranted a charge in justification (Penal Law, §§ 35.00, 35.05) despite defense counsel’s failure to request it. (See, also, People v May, 55 AD2d 739.)
The Zurita case herein is distinguishable from the case at bar since the claim was of a defensive nature as opposed to the instant case. Here there is no claim that the defendant was acting to protect himself or others. Eather, the defendant asserts that since he was justified in shooting at the robber to apprehend him, he cannot be held criminally accountable for doing it either negligently or recklessly.
With respect to the count charging negligent assault, there is no reason to assume that the Legislature intended to protect peace officers from criminal responsibility and hold civilians accountable when the use of deadly physical *624 force is authorized for both. Accordingly, the count charging negligent assault is dismissed.
The final issue of the motion relates to the charges of reckless endangerment and reckless assault.
Defendant contends that “under the statutory scheme in its entirety, it is simply not possible for conduct to be justifiable on the one hand, and either reckless or negligent on the other.”
However, in the words of the Court of Appeals, “We will not blindly apply the words of a statute to arrive at an unreasonable or absurd result” (Williams v Williams, 23 NY2d 592, 599).
It is inconceivable that the Legislature intended to permit such conduct. For example, if a person forcibly robbed a person of a wallet in Yankee Stadium and ran down the aisles, a civilian could fire numerous shots at him, regardless of the danger to hundreds of innocent bystanders. If the defendant’s view should prevail, the civilian shooter could not be held criminally liable even if he killed a dozen people. This court cannot believe that the Legislature intended such an absurd result.
Indeed, using that same fact pattern, even a New York City police officer would not be liable for such conduct, since recent legislation (obviously an oversight) eliminated such police officers from the definition of peace officers (CPL 1.20, 2.10).
The motion to dismiss the counts of reckless assault and reckless endangerment are denied.
THE “CLAYTON” MOTION
Also before the court is a motion pursuant to CPL 210.40 to dismiss the indictment in the furtherance of justice. The appropriate considerations, set out in People v Clayton (41 AD2d 204), are: (a) the nature of the crime, (b) the available evidence of guilt, (c) the prior record of the defendant, (d) the punishment already suffered by the defendant, (e) the purpose and effect of further punishment, (f) any prejudice resulting to the defendant by the passage of time, and (g) the impact on the public interest of a dismissal.
*625 The shooting, concededly unintentional towards the victim, occurred in the context of an attempt to apprehend a person who had just robbed the defendant. The crimes are misdemeanors. The defendant, a 64-year-old attorney, has never been arrested before. He has been licensed to carry a pistol since 1957.
The District Attorney has characterized the victim’s wounds as “minor”. He is not seeking a jail term for the defendant.
The legal issues are extremely complex and, indeed, the Legislature should clarify and recodify the justification section. Even though this court had upheld the two main counts of the indictment, there is a strong possibility that a jury would acquit.
The victim is primarily and justifiably interested in compensation for her injury. Since the defendant maintains personal liability insurance, the victim in this case is provided with both an adequate and enforceable remedy at law.
A dismissal in furtherance of justice is a very sensitive disposition. It should not be granted except in extraordinary situations. But the defendant’s age, exemplary past, the fact that he himself was the victim of a crime and that his “crime” stemmed from the laudable purpose of apprehending a criminal who could prey on others, and the availability of a fair and just remedy for damage done — all indicate that justice does not require a criminal conviction.
The defendant’s motion to dismiss in furtherance of justice is granted.