OPINION OF THE COURT
John H. Pennock, J.
In this CPLR article 78 proceeding, this petitioner Home Office Reference Laboratory, Inc. (HORL) seeks a determination » annulling the denial of the respondent Axelrod, Commissioner of Health of the State of New York, of petitioner’s application for a ruling pursuant to State Administrative Procedure Act §§ 204, 205 concerning the applicability of certain statutes and rules and regulations of the Health Department whereby respondent Axelrod imposed and collected from the petitioner an assessment in the amount of $5,120 for certain laboratory permits. The petitioner also seeks a judgment returning the assessment.
The petitioner Home Office Reference Laboratory, Inc. is a State of Kansas corporation which has its principal and only place of business in Johnson County, State of Kansas.
The respondent Axelrod is the Commissioner of Health of the State of New York and is responsible for issuing permits and assessing fees for clinical laboratories.
The respondent Regan is the Comptroller of the State of New York.
*445 Petitioner HORL was assessed a laboratory fee on May 27, 1983 which it paid under protest on June 13, 1983. HORL provides laboratory services to insurance companies only, which include blood and urine tests of life insurance applicants which lab results are used by the insurance company clients in the issuance of policies to the persons who are subjects of the tests which in this issue before the court are New York State residents.
The blood and urine tests are performed on the applicant resident of the State of New York by an agent for the insurance company and the specimens are then sent to the HORL as directed by the insurance company clients of HORL. The respondent bases the New York State laboratory reference fee on the number of tests performed as indicated on a table of fees schedule established by the Health Department respondent. HORL did not report the number of tests, however, the respondent placed it in the 120,000 to 369,999 category which placement was apparently a proper decision as HORL did not object specifically to that decision, however, it requested a declaratory ruling from the Health Department Commissioner in respect to the application of Public Health Law of the State of New York, article 5, title V and the regulations so adopted pertaining thereto to the petitioner laboratory. This was done on December 31,1983. In its application of December 31,1983 to respondents, the petitioner set forth its argument that HORL is not a laboratory subject to New York Public Health Law § 570 and set forth the following three questions with succinct argument that the petitioner laboratory was not subject to Public Health Law § 570. It also contends that Federal law preempted the State law and regulations and that the Public Health Law § 570 being applied to petitioner HORL would cause an undue burden on interstate commerce and would result in a violation of Federal concepts of due process.
The petitioner contends the Legislature did not intend that petitioner’s activities be regulated by New York Public Health Law, article 5, title V, § 570 et seq.
The task given the courts is to ascertain and give effect to the Legislature’s intent. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92, at 176; Rankin v Shanker, 23 NY2d 111 [1968].) The intent of the State Legislature is the primary object sought, and whenever such intention is apparent, it must be followed in construing the statute in order to promote the spirit, purpose and objects to be accomplished. (Kruger v Page Mgt. Co., 105 Misc 2d 14 [Sup Ct, NY County 1980]; Van Etten v State of New *446 York, 103 Misc 2d 487 [Ct of Claims 1980], affd 83 AD2d 963 [2d Dept 1981].)
When the literal meaning of a statute would lead to a result that conflicts with common sense and is unreasonable in light of the Legislature’s evident statutory purpose (De las Santos v Immigration & Naturalization Serv., 525 F Supp 655 [SDNY], affd 690 F2d 56 [2d Cir 1982]), then the spirit of the law should prevail over the letter of the law. (People v Jacobs, 105 Misc 2d 616 [Sup Ct, NY County 1980]; Matter of Perry v Zarcone, 98 Misc 2d 899 [Sup Ct, Suffolk County 1979], mod 77 AD2d 881 [1980]; Sinhogar v Parry, 53 NY2d 424 [1981]; Bulk Oil v Sun Oil Trading Co., 697 F2d 481 [2d Cir 1983] [court’s function is not to read the statute literally but to give effect to the legislative intent].)
Also, when there is a choice between two meanings, the Legislature shall have deemed to have intended the one that does not raise a serious question of constitutionality. (See, cases cited at Matter of People v Biochemical Procedures, 68 Misc 2d 753 [Sup Ct, NY County 1971], mod 38 AD2d 925 [1st Dept], affd 31 NY2d 792 [1972].)
Public Health Law § 574 provides, “[N]o person shall own or operate a clinical laboratory * * * solicit or accept a specimen for laboratory examination or collect, process or store human blood or blood derivatives, outside of the city of New York, unless a valid laboratory permit therefor has been issued”. This section was held applicable to laboratories outside of the State of New York, despite language of section 579 which arguably made the title applicable only to laboratories within the State of New York. (Matter of People v Biochemical Procedures, supra.)
“ ‘Laboratory’ means and includes a clinical laboratory and a blood bank.” (Public Health Law § 571 [3].) “Clinical laboratory” is defined by section 571 (1) to mean: “[A] facility for the microbiological, serological, chemical, hematological, biophysical, cytological or pathological examination of materials derived from the human body, for the purpose of obtaining information for the diagnosis, prevention, or treatment of disease or the assessment of medical condition.” As no reasonable argument can be made (and indeed respondent does not attempt to make such an argument) that what petitioner does is for the purpose of obtaining information for the diagnosis, prevention, or treatment of disease, the issue here is whether the services performed by petitioner are, within the intent of the Legislature, for the purpose of obtaining information for the assessment of medical condition. Clearly, they are not.
*447 Public Health Law § 570 provides in relevant part: “Clinical laboratories * * * provide essential public health services in aiding the medical practitioner by furnishing information invaluable to the diagnosis and treatment of disease. The improper performance of a laboratory procedure may induce an erroneous diagnosis or contribute to the selection of an inappropriate method of treatment, resulting in prolonged or unnecessary hospitalization, injury or even death.” (See, message of Governor Nelson A. Rockefeller, dated Mar. 29, 1964, 1964 McKinney’s Session Laws of NY, at 1954-1955 [containing nearly identical language].)
Petitioner does not provide its services to medical practitioners, nor is the data furnished by it used in the diagnosis or treatment of disease. There is no conceivable manner in which the data provided by petitioner could induce an erroneous diagnosis or contribute to the selection of an inappropriate method of treatment, since that data is used only by the underwriting departments of insurance companies and is not made known to insurance applicants or their physicians.
Public Health Law § 580 provides, “This title shall be construed as regulating only activities which constitute patient services or services provided to health officers or their agents for sanitary purposes.” There can be no more obvious statement that the intent of these statutes is not to regulate those activities engaged in by petitioner. Petitioner’s activities do not constitute patient services or services provided to health officers or their agents, nor are petitioner’s activities “for sanitary purposes.”
General Business Law § 394-e provides for direct billing by clinical laboratories to patients. Under this section it is unlawful for clinical laboratories to bill or receive payment from any person other than the patient (with certain limited exceptions). Application of this section to petitioner is erroneous. Petitioner’s clientele consists of insurance companies, and it is the insurance companies that are (and should be) billed for its services. The recipients of its services are not the insurance applicant, but rather the insurance companies that use the data provided for underwriting purposes.
The quality control standards developed by respondent Commissioner Axelrod, through the Division of Laboratories and Research, refer to and speak in terms of the “patient.” Neither the insurance carrier nor the applicant is a patient.
10 NYCRR 58-1.7 (b) provides in relevant part: “Except as otherwise provided in section 58-1.9 of this Subpart, a clinical *448 laboratory shall examine specimens only at the request of a licensed physician or other person authorized by law to use the findings of laboratory examinations in his practice or the performance of his official duties. If the request is oral, the physician or other authorized person shall submit a written request to the laboratory within 48 hours.”
And, 10 NYCRR 58-1.8 provides in relevant part as follows: “No person shall report the result of any test, examination or analysis of a specimen submitted for evidence of human disease * * * except to a physician, his agent, or other person authorized by law to employ the results thereof in the conduct of his practice or in the fulfillment of his official duties.”
Finally, 10 NYCRR 58-1.11 (b) (2) provides in relevant part as follows: “Each clinical laboratory * * * shall retain a duplicate copy of the [original] report” made “to the physician or other authorized person [of] each specimen [received] for analysis.” (See, Instructions for Completion of Statistical Report — Form LR-81, item No. 1. [“Include only those tests and procedures performed on human specimens and reported to physicians or others authorized by law to use the results of laboratory tests in their practice. Exclude quality control specimens, proficiency testing specimens, and tests performed but not reported to an authorized practitioner.”].)
These relevant regulations evidence the intent of the statute as interpreted by the Health Department. If petitioner is a “clinical laboratory,” it can examine specimens only at the request of a licensed physician or “other person authorized by law,” and can only report the results of its tests to these same persons. Presumably, insurance companies are not “authorized by law” to request specimens or receive test results.
Manifestly, the plain meaning of these statutes, as well as the reasonable and commonsense interpretation of them, is that the activities of petitioner are not regulated by them. In fact, section 580 is a mandate not to construe these statutes as regulating the activities of petitioner. Also, unlike the laboratory in Biochemical Procedures (68 Misc 2d 753, supra), here it is undisputed that petitioner does not solicit or accept specimens for laboratory examination within the State of New York, nor does it collect, process or store specimens within the State of New York. And, unlike the laboratory in that case, petitioner offers its services only to insurance companies, who are its clients and who may or may not be located in New York. In addition, petitioner is exempted from Federal licensing by statute. The trial court in *449 Biochemical Procedures laid a very heavy emphasis on Biochemical’s New York ties which petitioner does not have.
There are no ties with New York State in the instant facts. There is no personal contact with the insurance applicant. In fact, the initiating insurance company assumes the burden of physically taking the urine or blood samples by its agent or person employed by the insurance company for that purpose.
Respondent’s position that a subterfuge may result to circumvent the statute is without merit. It assumes that petitioner is routing test results through a third party. That is simply not the case. Petitioner’s clients are the insurance companies, from whom it receives specimens and to whom it sends data. By finding for petitioner, no precedent will be established allowing a means of subterfuge for third parties willing to engage in schemes or artifices to defraud the State or the public.
Congress did not indicate any such fear when it enacted Federal statutes which specifically exempted insurance companies’ procedures for testing involving interstate commerce (see, Clinical Laboratories Improvement Act of 1967,42 USC § 263a).
The record is void of any factual account by the respondent Commissioner which would bring the petitioner within the intent and policy of Public Health Law, article 5, title V. It makes no allegations in the record which could be considered as a violation of the policy and statement of purpose of title V as specifically set forth in Public Health Law § 570. The respondent has failed in its proof to establish that there is any patient involved in this procedure of the insurance company or the petitioner laboratory. Simply put, this court can make no statutory construction or finding that would justify the respondent Health Department casting its net to remote places outside this State when the laboratory procedure snared has performed no act which could bring them within the intent of the Public Health Law.
This court thus finds that the relevant provisions of the New York Public Health Law do not apply to the petitioner laboratory, therefore, it is not necessary that this court consider the question of respondent’s fee schedule; the issue in respect to a burden on interstate commerce; preemption of the Federal laws; or abuse of discretion in respect to the fee schedule shall not be considered by this court.
As to the first objection in point of law, the court finds it has no legal standing. CPLR 217 does set forth a four-month Statute of Limitations, however, respondents’ reliance on June 16,1983 as the final decision date is erroneous. The cause of action *450 accrues when a final decision is made. The petitioner properly resorted to the State Administrative Procedure Act which provides for a review by employment of an article 78 proceeding. (State Administrative Procedure Act § 205.) The petitioner made a petition for a declaratory ruling on November 25, 1983 and on December 25,1983 the petition was properly considered denied by the petitioner as no decision was made by the respondent for a 30-day period. (State Administrative Procedure Act § 205.) It is thus the four-month statute is triggered. Therefore, the proceeding was within the four-month period when it was commenced on April 20, 1984.
The second objection in point of law has no merit. The Comptroller is a proper party on the basis that he has the control of the now illegal fee charged to petitioners and to effectuate this judgment the Comptroller shall be directed to reimburse to the petitioner the fees paid plus interest from the date of payment.
The third objection in point of law has no merit. The petition and record alleged facts upon which conclusions are based in the petition.
The fourth objection in point of law has no merit. A question of this legislative intent was clearly raised in petitioner’s letter of November 21, 1983. Further, the respondent’s employment of the fee schedules it adopted to the petitioner’s laboratory operation was an illegal act as a matter of law. The facts upon which this finding of the court is based is supported by the record. Certainly, the correspondence containing the facts as alleged by both parties supports the petitioner’s interpretation and raises a question of the applicability of the statute to the petitioner.
A final judgment is also granted to petitioner annulling the denial of petitioner’s request for a ruling; prohibiting respondent from making assessments and annulling any assessments made against petitioner; nor shall any action be taken to compel petitioner to obtain a permit while it operates as a laboratory for testing limited to the facts, that is, insurance applicant testing by urine or blood specimen used for insurance procedures only; and that the respondent shall not inform any insurance company or agents thereof not to do business with respondent in respect to submission of specimens for insurance purposes only; and for refund of assessment as heretofore determined. In addition, any other determination heretofore contained in this decision shall be set forth to effectuate this court’s judgment.
This judgment shall not be considered to impair or invalidate any part of the Public Health Law, article 5, title V. It is limited to the petitioner’s relief as determined.